

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1539-07

**ROBERT HUFFMAN, Appellant**

v.

**THE STATE OF TEXAS**

### ON APPELLANT'S AND STATE'S PETITIONS
### FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR  COUNTY

KELLER, P.J., delivered the opinion of the court in which PRICE, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. MEYERS, J., filed a concurring opinion. WOMACK, J., filed a concurring opinion. JOHNSON, J., filed a concurring opinion. COCHRAN, J., filed a concurring opinion in which PRICE, JOHNSON, and HOLCOMB, JJ., joined.

We must determine whether charging the jury in the disjunctive with respect to various statutory methods of committing the offense of "failure to stop and render aid" resulted in a violation of the constitutional requirement that the jury's verdict be unanimous.  We conclude that these various statutory methods for committing the offense do not constitute separate offenses, but are merely alternate means of committing the same offense.  Consequently, the trial judge correctly

charged the jury with the different statutory methods in the disjunctive.

## I. BACKGROUND

Appellant was involved in a motor vehicle accident that resulted in the death of Rafael Garcia. The accident was a "hit and run"–appellant was not present when officers arrived at the scene. Subsequently, appellant was charged with the offense of "failure to stop and render aid."[1]

At trial, in accordance with the applicable statutes, the abstract portion of the jury charge summarized the requirements imposed upon a motorist who is involved in an accident resulting in injury or death:

> Our law provides that the operator of a vehicle involved in an accident resulting in injury to or death of a person shall immediately stop the vehicle at the scene of the accident or as close to the scene as possible; immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and remain at the scene of the accident until the operator gives the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision; and provide any person injured in the accident reasonable assistance, including transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary.

The application paragraph charged three methods of violating the statute in the disjunctive:

> Now, if you find from the evidence beyond a reasonable doubt that . . . [Robert Huffman, operating a motor vehicle involved in an accident resulting in death and] . . . knowing said accident had occurred failed to immediately stop, return to the scene of the accident, or remain at the scene of the accident [to give certain information] . . . then you will find the defendant guilty of failure to stop and render aid as charged in the indictment.[2]

---

[1] *See* TEX. TRANSP. CODE §§550.021, 550.023.

[2] The jury charge also alleged the information to be given in the disjunctive, as:

Robert Huffman's name and address, the registration number of the vehicle Robert Huffman was driving, or the name of Robert Huffman's motor vehicle liability insurer to Rafael Garcia; or to provide Rafael Garcia reasonable assistance, including

Appellant did not object to the application paragraph's disjunctive wording. The jury found appellant guilty and sentenced him to imprisonment for twenty years and a fine of $10,000.

On appeal, appellant claimed that the disjunctive wording violated his constitutional right to a unanimous verdict. The court of appeals agreed, but held that appellant was not egregiously harmed.[3] Both the State and appellant have petitioned for discretionary review. The State complains about the court of appeals's holding that there was a jury unanimity violation, while appellant complains about the court of appeals's harm analysis.

## II. ANALYSIS

Our jury unanimity opinions and several of our double jeopardy opinions address the same basic question: In a given situation, do different legal theories of criminal liability comprise different offenses, or do they comprise alternate methods of committing the same offense? These closely intertwined strands of our jurisprudence have addressed the basic question in four contexts: (1) homicide offenses, (2) injury to a child offenses, (3) credit card abuse offenses, and (4) sex offenses.

With respect to homicide offenses, we have held that different legal theories involving the same victim are simply alternate methods of committing the same offense. In *Kitchens v. State*, we approved a jury charge that disjunctively alleged two different capital murder theories with respect

---

transporting or making arrangements for transporting Rafael Garcia to a physician or hospital for medical treatment, when it was apparent that treatment was necessary, then you will find the defendant guilty of failure to stop and render aid as charged in the indictment.

Because appellant did not complain about this portion of the jury charge to the court of appeals, we have no occasion to address it.

[3] *Huffman v. State*, 234 S.W.3d 185, 189-94 (Tex. App.–San Antonio 2007). *See also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

to the same victim: murder in the course of aggravated sexual assault and murder in the course of robbery.[4]  We characterized these as "alternate theories of committing the same offense."[5]  In *Ex parte Ervin*, we held that the Double Jeopardy Clause prohibited convictions for both manslaughter and intoxication manslaughter when only one person was killed.[6]  We found that the *Blockburger*[7] "same elements" test was "not the sole test for determining whether offenses are the same under the multiple punishments aspect of the Double Jeopardy Clause."[8]  Other considerations included: "whether the offense provisions are contained within the same statutory section, whether the offenses are phrased in the alternative . . . [and] whether the offenses have a common focus (i.e. whether the 'gravamen' of the offense is the same) and whether that common focus tends to indicate a single instance of conduct."[9]

In the injury to a child context, whether separate legal theories comprise separate offenses depends upon whether the theories differ with respect to the result of the defendant's conduct.  In *Jefferson v. State*, we held that a jury was not required to unanimously find which of three alleged acts or omissions resulted in the child victim's death.[10]  We found that "the essential element or focus" of the injury to a child statute was "the result of the defendant's conduct"–injury to

---

[4]  823 S.W.2d 256, 257 (Tex. Crim. App. 1991).

[5]  *Id.*

[6]  991 S.W.2d 804, 817 (Tex. Crim. App. 1999).

[7]  284 U.S. 299 (1932).

[8]  *Ervin*, 991 S.W.2d at 814.

[9]  *Id.*  Other considerations not relevant here were also recited.  *See id.*

[10]  189 S.W.3d 305, 306, 312- 14 (Tex. Crim. App. 2006).

child–"and not the possible combinations of conduct that cause the result."[11] Following *Jefferson* in *Villanueva v. State*, we held that the Double Jeopardy Clause prohibited the State from obtaining two injury to a child convictions for a death that resulted from both an act and an omission.[12] We rejected the State's claim that injury to a child was a "conduct-oriented" offense and concluded, based on *Jefferson*, that it was in fact a result-oriented offense.[13]

By contrast, *Stuhler v. State* involved legal theories of injury to a child that differed with respect to the type of injury inflicted.[14] Emphasizing that injury to a child was a "result of conduct" offense, we held in that case that the different types of injuries (being results) were "elemental" and thus jury unanimity was required as to the type of injury.[15] In doing so, we also applied an "eighth-grade grammar" approach suggested by Judge Cochran as "a general rule of thumb" for determining legislative intent:

> In sum, we must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime) . . . . Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.[16]

Unlike homicide and injury to a child offenses, credit card abuse is a nature of conduct crime, which can be committed in a number of ways, including: (1) stealing a credit card, (2) receiving a

---

[11] *Id.* at 312.

[12] 227 S.W.3d 744, 748-49 (Tex. Crim. App. 2007).

[13] *Id.*

[14] 218 S.W.3d 706, 718 (Tex. Crim. App. 2007)

[15] *Id.* at 718-19.

[16] *Id.* at 718 (quoting *Jefferson*, 189 S.W.3d at 315-16 (Cochran J., concurring)).

credit card owned by another, knowing that it had been stolen, and acting with intent to use it, and (3) presenting a credit card with intent to obtain a benefit fraudulently, knowing that the use was without the effective consent of the cardholder.[17] When confronted in *Ngo v. State* with a jury charge that disjunctively charged these three different types of conduct as a single offense, we held that the State had charged "three different criminal acts," and the defendant's constitutional right to a unanimous verdict required that the jurors "unanimously agree[] upon the commission of any one of these criminal acts."[18] We noted in that case that a "handy, though not definitive, rule of thumb is to look at the statutory verb defining the criminal act. That verb . . . is generally the criminal act upon which all jurors must unanimously agree."[19]

Sex offenses are also nature of conduct crimes, and we have uniformly required that different types of conduct specified in the various statutes be treated as separate offenses. In *Vick v. State*, a double jeopardy case, we observed that aggravated sexual assault is a "conduct-oriented offense in which the legislature criminalized very specific conduct of several different types."[20] We concluded that "separately described conduct constitutes a separate statutory offense" and could be separately prosecuted.[21]

In *Francis v. State*, we held that two different types of conduct described by the offense of indecency with a child occurring at two different times were separate offenses, so that the disjunctive

---

[17] *See Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005).

[18] *Id.*

[19] *Id.* at 745 n.24.

[20] 991 S.W.2d 830, 832 (Tex. Crim. App. 1999).

[21] *Id.* at 833.

submission of the two types of conduct in the jury charge violated the right to jury unanimity.[22] This holding left open, however, whether the two different types of conduct were inherently different offenses or simply were different offenses on the facts of the case.

We resolved that issue in *Pizzo v. State*, another jury unanimity case, which held that the different types of conduct proscribed by the indecency with a child statute were different offenses, even if they occurred during the same transaction.[23] In *Pizzo*, we exhaustively analyzed the grammatical structure of the statute but found most persuasive the "focus" of the offense: "Unlike murder, injury to a child, and criminal mischief where the result is the focus, the conduct is the focus of the definition of sexual contact."[24] We further observed that treating each type of conduct as a separate offense comported with our decision in *Vick*.[25]

The common thread in all of these cases seems to be "focus." We use grammar and we look to other factors bearing on whether different legal theories constitute the "same" offense or "different" offenses, but those tools seem useful mainly as an aid to determining focus. The focus or "gravamen" of the offense seems to be one of the best indicators of the allowable unit of prosecution prescribed by the legislature. If the focus of the offense is the result–that is, the offense is a "result of conduct" crime–then different types of results are considered to be separate offenses, but different types of conduct are not. On the other hand, if the focus of the offense is the conduct–that is, the offense is a "nature of conduct" crime–then different types of conduct are

---

[22] 36 S.W.3d 121, 124 (Tex. Crim. App. 2000).

[23] 235 S.W.3d 711, 716-19 (Tex. Crim. App. 2007).

[24] *Id.* at 717.

[25] *Id.*

considered to be separate offenses. Some offenses, such as capital murder, may contain both result of conduct and nature of conduct elements, and the question becomes which aspect of the statute predominates, or possibly whether both aspects are equally important for determining the separateness of offenses.

There is a third kind of focus that we have not yet discussed, and which has not been addressed in this area of the law: "circumstances surrounding the conduct."[26] If "circumstances surrounding the conduct" is the focus of the offense, then under a focus-based approach to determining separateness of offenses, different types of conduct could establish alternate methods of committing the same offense rather than different offenses, so long as the circumstances surrounding the conduct are the same.

We turn now to the statute before us. The statute that makes the failure to stop and render aid a criminal offense provides in relevant part:

> (a) The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:
>
> > (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
> >
> > (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and
> >
> > (3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.
>
> (b) An operator of a vehicle required to stop the vehicle by Subsection (a) shall do so without obstructing traffic more than is necessary.
>
> (c) A person commits an offense if the person does not stop or does not comply with

---

[26] *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); TEX. PEN. CODE §6.03(b)-(d).

the requirements of this section.[27]

The question, then, is what is the focus of this offense? We have said that the gravamen of the offense is "leaving the scene of an accident."[28] But more particularly, our caselaw leads to the conclusion that an "accident" is the focus of the statute. We have held that a culpable mental state must attach to this circumstance, i.e., whether an accident occurred.[29] When a culpable mental state is required to attach to a particular circumstance, it is because that circumstance is the gravamen of the offense.[30]

In *McQueen v. State*, for example, the offense of unauthorized use of a motor vehicle provided that a person "commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the consent of the owner."[31] We said:

> Since operating another's motor-propelled vehicle is not criminal by its very nature this offense is not a "nature of conduct" type offense. Nor is it a "result" type offense since the statute does not prohibit any specific result of such operation. What makes the conduct unlawful is that it is done under certain circumstances, i.e., without the owner's permission. Therefore, the unauthorized use of a motor vehicle is a "circumstances" type offense, and the culpable mental state of "knowingly" must apply to those surrounding circumstances.[32]

Likewise, appellant's failure to stop, return, or remain becomes criminal only because of his knowledge of circumstances surrounding the conduct: an accident and a victim suffering an injury.

---

[27] TEX. TRANSP. CODE §550.021. Another statute, §550.023, also contributes to the definition of the offense, but its requirements are not relevant here.

[28] *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).

[29] *Goss v. State*, 582 S.W.2d 782, 785 (Tex. Crim. App. 1979)(§6.02 requires that the accused in a failure to stop and render aid case had "knowledge of the circumstances surrounding his conduct . . . i.e., had knowledge that an accident had occurred").

[30] See *McQueen*, 781 S.W.2d at 603.

[31] *Id.* (quoting TEX. PEN. CODE §31.07(a)).

[32] *Id.*

In addition, we have held that a separate prosecution for failure to stop and render aid can occur for each individual injured in the accident whom the defendant fails to aid.[33] Because separate victims result in separate offenses for double jeopardy purposes, they also result in separate offenses for jury unanimity purposes.

From this discussion, we determine that "failure to stop and render aid" is a "circumstances surounding the conduct" offense, with the circumstances being an accident and victims. At least presumptively, then, the prescribed unit of prosecution is "each victim, each accident."

Other aspects of the language and structure of the statute strengthen this conclusion. Unlike the touching of various body parts found in sex offenses, which are independent acts, the "stop," "return," and "remain" requirements are not independent of each other. Rather, they are serial requirements that all relate, step-by-step, to what an actor must do with respect to the scene of an accident. The "stop" requirement can be met in one of two ways: stopping at the scene of the accident or stopping as close as possible to the scene of the accident. The "return" requirement is contingent upon the driver satisfying the "stop" requirement via the second method. That is, if the actor does not stop at the scene, but stops as close as possible to the scene, then he must return to the scene. The "remain" requirement is contingent upon the driver satisfying the stop requirement by the first method or satisfying the stop requirement by the second method plus the return requirement. That is, if the driver stops at the scene, then he must remain at the scene, or if he stops as close as possible to the scene and returns to the scene, then he must remain at the scene.

An allegation that the three different types of requirements have been violated is effectively an allegation in the alternative. The "return" provision contemplates a stop that is not at the scene

---

[33] *Spadling v. State*, 773 S.W.2d 553, 556-57 (Tex. Crim. App. 1989).

but as close as possible to the scene, not a total failure to stop. And one cannot fail to "remain" at the scene if one never stops at the scene to begin with.

Even if one could say that a driver could fail to "stop," "return," and "remain," such a failure would not reasonably constitute three discrete instances of conduct. Aside from the problem that these are all omissions, one still could not categorize the omissions as separate in any meaningful respect. A person who fails to stop at all might be said to violate all three requirements, but that is really just a single failure. One could fail to stop, one could stop close to the scene but not return, or one could stop at the scene or return to the scene but not remain. In any one of those cases, only one failure can be meaningfully ascribed to the driver.

The legislature could have written the statute so that the State could obtain three convictions when there is only one accident and one victim. But based on our analysis, as well as a natural reading of the statute, we hold that "failing to stop," "failing to return," and "failing to remain" are simply alternate methods of committing the same offense. Consequently, this case is controlled by *Kitchens*, *Ervin*, *Jefferson*, and *Villanueva*, and the jury charge did not violate appellant's right to a unanimous verdict. The State's contention in this regard is sustained, appellant's petition for discretionary review is dismissed, and the judgment of the court of appeals is affirmed.


Delivered: October 1, 2008
Publish