



## MEMORANDUM OPINION

No. 04-09-00211-CR

Maurice A. **MOSES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2007CR8924
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:      Karen Angelini, Justice
              Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  April 13, 2011

AFFIRMED

Maurice Moses was convicted of capital murder and sentenced to life imprisonment. He brings three issues on appeal: (1) the trial court erred in denying his motion to suppress because his statement was not voluntary; (2) the trial court erred because the jury charge permitted his conviction on proof different from, and less than, that required to prove the allegation in the indictment; and (3) the trial court's charge denied him the right to a unanimous jury verdict. We affirm.

**BACKGROUND**

On the day of the murder, July 11, 2007, the victim, nineteen-year-old Mariano Sanchez, was home with his uncle Marcelino Cervantez, who was also nineteen years old; his uncle's girlfriend Frankie Perez; and her mother Diane Perez. Frankie Perez testified at trial that at about 6:30 a.m. on the day of the murder, while everyone in the house was asleep, she heard banging on the front door and answered the door. A man came running into the house with a gun and went straight to Mariano Sanchez's bedroom. A second man, Moses, whom Frankie Perez knew from previous drug deals, then entered the house and pointed a gun in her face. Moses told her and her mother to get on the ground. Frankie Perez heard "fighting" and "struggling" coming from Sanchez's bedroom. Then, she heard one gunshot, more struggling, and then another gunshot. Frankie Perez then saw Moses go into Sanchez's bedroom and heard him say, "You weren't supposed to kill him; you were just supposed to hurt him." While Moses was still inside Sanchez's bedroom, Frankie Perez heard a third gunshot. Frankie Perez heard more struggling and then heard Mariano Sanchez say, "You have the drugs. You have what you want, leave." Frankie Perez heard more struggling and heard Mariano Sanchez say, "No, no, no." She then heard a fourth gunshot. After that fourth gunshot, Moses and the man, whom Moses called "Primo," ran outside. Then, Primo came back and ran into Sanchez's bedroom. Frankie Perez heard Primo say, "Lay your ass right there." She then heard one final gunshot. After the men left, Frankie Perez went into her boyfriend's bedroom and saw that her boyfriend, Cervantez, had managed to sleep through the shooting. Once she was able to wake him up, Cervantez went to Sanchez's bedroom and saw that Sanchez was dead. Sanchez had been shot three times.

At trial, Moses testified that he did not go into the house voluntarily, but was forced to by Primo and "Burger" because he had "snitched" on Primo. Moses claimed that he did not

voluntarily point a gun at Frankie Perez or her mother and that he did not voluntarily tell them to lay on the ground. Moses also claimed to not have been responsible for any of the gunshots that hit Sanchez.

After hearing all the evidence presented at trial, the jury found Moses guilty of capital murder.

### MOTION TO SUPPRESS

In his first issue, Moses argues that the trial court erred in denying his motion to suppress his statements made to police because his statements were involuntary and the product of illegal coercion by the police. The Texas Court of Criminal Appeals has repeatedly held that "the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses and the evidence presented at a hearing on a motion to suppress, particularly where the motion is based on the voluntariness of a confession." *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007) (citations omitted). Because of "this vital role, great deference is accorded to the trial court's decision to admit or exclude such evidence, which will be overturned on appeal only where a flagrant abuse of discretion is shown." *Id.*

In determining whether to admit or exclude such evidence, a trial court considers whether the defendant voluntarily made such statements "without compulsion or persuasion." TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). And, in considering whether a confession was voluntarily made, a trial court should examine the totality of the circumstances. *Arizona v. Fulminante*, 499 U.S. 279, 285–86 (1991); *Delao*, 235 S.W.3d at 239.

At the suppression hearing, Moses and Sergeant Jimmy Willingham testified. Further, a DVD of the interrogation was admitted in evidence. Moses testified that at the time of the interrogation, he was self-medicating by taking Xanax, which caused him "to be sleepy and not

keep track of what's going on." He also admitted that Xanax might exaggerate his perception of what was happening to him. According to Moses, Sergeant Willingham and another officer told him in a "threatening manner" that he needed to work with them. Moses testified that when he was taken to the bathroom, an officer kept saying that he did not believe Moses. According to Moses, in the restroom, the officer "clamped" the handcuffs "real tight" on him and told him that he needed to tell the truth. Moses claims that as a result, he felt intimidated. Moses also testified that the officer said that if Moses told the truth, he would be arrested for his traffic tickets and would then be allowed to go home.

Sergeant Willingham, on the other hand, testified that Moses was never threatened or coerced. According to Sergeant Willingham, Moses was arrested on active municipal court warrants. He was taken to the police station and placed in an interview room. Before the interview began, Sergeant Willingham asked Moses if he need to use the restroom or something to drink. When Moses said that he did need to use the restroom, Sergeant Willingham and Officer Dennis Colburn walked Moses to the restroom, and Officer Colburn went into the restroom with Moses. According to Sergeant Willingham, during Moses's trip to the restroom, neither he nor Officer Colburn threatened, harmed, or pressured Moses. When Moses had finished using the restroom, they escorted him back to the interview room, and Sergeant Willingham advised him of his rights. Sergeant Willingham testified that during the interrogation, he did not threaten, injure, or coerce Moses in any way. Further, Sergeant Willingham testified that Moses did not appear to be under the influence of drugs or alcohol. And, as noted, a DVD of this interrogation was admitted in evidence.

At the conclusion of the hearing, the trial court determined that the DVD contained two different types of statements: (1) those Moses made during his interrogation with police; and (2)

those made while speaking to third parties on a telephone in the interview room. The trial court determined that the latter statements, which were made while Moses was alone in the interview room, were not made as a result of custodial interrogation. The trial court further found that the statements made as a result of police interrogation were voluntarily made.

We first note that as the sole trier of fact during the suppression hearing, the trial court was free to disbelieve Moses's testimony of the events that occurred in the restroom. *See Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010) ("As the sole trier of fact during a suppression hearing, the trial court may believe or disbelieve all or any part of a witness's testimony."); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (explaining that as sole trier of fact, the trial court may disbelieve all or any part of a witness's testimony, even if that testimony is not controverted). And, the trial court was free to believe Sergeant Willingham's testimony that Moses was not threatened or coerced in any manner. *See Wilson*, 311 S.W.3d at 458; *Ross*, 32 S.W.3d at 855. Finally, the trial court had the DVD that recorded the interrogation. Given this record, we find no abuse of discretion by the trial court in denying Moses's motion to suppress. *See Delao*, 235 S.W.3d at 238.

## JURY CHARGE

With respect to the jury charge, Moses first argues that the charge was "fatally and fundamentally flawed because it permitted his conviction on proof different from, and less than, that required to prove the allegation in the indictment." Here, the indictment charged Moses with having committed capital murder:

> on or about the 11th day of July, 2007, MAURICE MOSES, hereinafter referred to as defendant, did intentionally cause the death of an individual, namely, Mariano Sanchez, hereinafter referred to as complainant, by SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY, A FIREARM, and the defendant was in the course of committing or

attempting to commit the offense of ROBBERY of Mariano Sanchez.

And, the application paragraphs of the charge stated as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of July, 2007, in Bexar County, Texas, "Primo" did intentionally cause the death of an individual, namely: Mariano Sanchez, by shooting Mariano Sanchez with a deadly weapon, namely: a firearm, and "Primo" was in the course of committing or attempting to commit the offense of robbery of Mariano Sanchez, and that the defendant, Maurice Moses, acting with the intent to promote or assist the commission of the offense of capital murder, did solicit, encourage, direct, aid or attempt to aid "Primo" in the commission of the offense of capital murder;

> Or, if you find from the evidence beyond a reasonable doubt that Maurice Moses entered into a conspiracy with "Primo" to commit the felony offense of robbery, and that on or about the 11th day of July, 2007, in Bexar County, Texas, in an attempt to carry out this agreement, "Primo" did intentionally cause the death of an individual, namely: Mariano Sanchez, by shooting Mariano Sanchez with a deadly weapon, namely: a firearm, and "Primo" was in the course of committing or attempting to commit the offense of robbery of Mariano Sanchez, and that such offense was committed in furtherance of the unlawful purpose to commit robbery and was an offense that should have been anticipated as a result of the carrying out of the conspiracy to commit robbery;

> Then, you will find the defendant guilty of capital murder as charged in the indictment.

Moses argues that because he was not charged with the offense of conspiracy in the indictment, the trial court erred by including in the application paragraphs of the jury charge conspiracy language pursuant to section 15.02 of the Penal Code. We disagree. The Texas Court of Criminal Appeals rejected this argument in *Montoya v. State*, 810 S.W.2d 160 (Tex. Crim. App. 1989).

Section 7.02 of the Penal Code, titled "Criminal Responsibility for Conduct of Another," provides the following:

> (a) A person is criminally responsible for an offense committed by the conduct of another if:

> (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>
> (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
> (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.
>
> (b) If, *in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators*, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02 (West 2003) (emphasis added). Section 15.02(a) of the Penal Code, titled "Criminal Conspiracy," provides the following:

> (a) A person commits criminal conspiracy if, with intent that a felony be committed:
>> (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and
>>
>> (2) he or one or more of them performs an overt act in pursuance of the agreement.

*Id.* § 15.02(a).

In *Montoya*, 810 S.W.2d at 164, as here, the indictment said nothing about a conspiracy and the jury charge tracked the language of section 7.02(b) and contained the definition of conspiracy from section 15.02 of the Penal Code. And, as here, the appellant argued that the inclusion of the theory of conspiracy in the court's charge constituted error because the offense of conspiracy had not been alleged in the indictment. *Id.* at 165. In so arguing, the appellant emphasized that criminal conspiracy is an offense under section 15.02 of the Penal Code and that

because he had no notice that he was being charged with the offense of criminal conspiracy, the jury was erroneously instructed on an alternate theory of conviction. *Id.* The court of criminal appeals, however, concluded that the appellant was "mistaken in his argument." *Id.*

According to the court, the trial court's charge did not instruct the jury to consider whether the appellant was guilty of the separate offense of criminal conspiracy, but, instead, the charge "merely contained an alternative 'parties' charge as provided" in section 7.02(b) of the Penal Code. *Id.* The court then explained that "[i]t is well accepted that the law of parties may be applied to a case even though no such allegation is contained in the indictment" and that "[t]his rule applies not only to the law of parties found in section 7.02(a)(2) but also the law of parties found in section 7.02(b)." *Id.* The court further explained that its "examination of case law shows that the theory of criminal responsibility set forth in section 7.02(b) has often been applied in capital murder cases." *Id.* Thus, pursuant to *Montoya*, although the indictment said nothing about a conspiracy, the application paragraph of the jury could properly include a parties charge from section 7.02(b) and a definition of criminal conspiracy from section 15.02 of the Penal Code. *Id.*; *see also Depue v. State*, No. 04-08-00487-CR, 2009 WL 5150069, at *6 (Tex. App.—San Antonio 2009, no pet.) (following *Montoya* and holding that in capital murder case, the application paragraph of the charge properly referenced section 7.02(b) and included a definition of criminal conspiracy from section 15.02, even though the indictment said nothing about a conspiracy).

Again pointing to the conspiracy language contained with the second application paragraph, Moses argues that the court's charge denied him the right to a unanimous verdict "because the charge allowed the jury to convict him of capital murder on two separate and distinct theories." We disagree.

Unanimity is required under the Texas Constitution in felony cases and under the Texas Code of Criminal Procedure in all criminal cases. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006). Unanimity means that "each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). In determining unanimity, the question is whether the jury charge submitted different offenses or simply alternate methods of committing the same offense. *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008). To answer this question, we determine the focus or gravamen of the offense. *Id.* at 907.

Here, Moses was charged with capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2010). The gravamen or focus of the offense was the murder of Mariano Sanchez during the commission of a robbery. *See Huffman*, 267 S.W.3d at 907; *Depue*, 2009 WL 5150069, at *7. The jury charge authorized the jury to find Moses guilty of this single offense as a party under either section 7.02(a)(2) or section 7.02(b). *See Depue*, 2009 WL 5150069, at *7. Thus, the jury charge did not submit different offenses, but simply submitted alternate methods of committing the same offense. *See Huffman*, 267 S.W.3d at 905; *see also Depue*, 2009 WL 5150069, at *7 ("Thus, the charge permitted the jury to find alternative theories of party liability for the commission of the single criminal offense of capital murder."). Therefore, "[t]he jury charge did not authorize or permit the jury to return anything less than a unanimous verdict." *Depue*, 2009 WL 5150069, at *7.

### CONCLUSION

We affirm the judgment of the trial court.

Karen Angelini, Justice

DO NOT PUBLISH