IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1022-12






MICHAEL COOPER, Appellant



v.



THE STATE OF TEXAS






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Price, J., filed a dissenting opinion in which Keasler and Hervey, JJ., joined.


DISSENTING OPINION


 The appellant was convicted of five counts of aggravated robbery committed against
a total of three different victims, all stemming from events that occurred during the course
of a single home invasion. (1) Two of the convictions, corresponding to Counts I and II of the
indictment, involved separate theories of the underlying robbery (robbery by causing bodily
injury versus robbery by threatening or placing another in fear of imminent bodily injury or
death) perpetrated against one Andrew Chaney. (2) Two other convictions, corresponding to
Counts III and IV of the indictment, involved the same two theories of the underlying
robbery (robbery by causing bodily injury versus robbery by threatening or placing another
in fear of bodily injury or death) perpetrated against one James Barker. (3)

 On appeal, the appellant argued that he could not be convicted twice for robbing
Chaney; nor could he be convicted twice for robbing Barker. Instead, the appellant
maintained, he could only be punished for as many robberies as there were victims. (4) In the
appellant's view, this Court's opinion in Ex parte Hawkins essentially occupied the field
when it comes to determining allowable units of prosecution for robbery offenses when we
held that the State may punish for as many victims as were assaulted during an incident. (5) 
From this premise the appellant reasoned that, while he could be convicted separately of
robbing both Chaney and Barker, he could only be convicted of robbing each of them once,
for a total of two convictions. The Third Court of Appeals rejected this argument. (6) The
court of appeals held that, consistently with this Court's precedents, the number of victims
should not be regarded as the only determinant in a units-of-prosecution analysis. (7) 
Accordingly, the court of appeals affirmed all of the convictions. (8) We granted the
Appellant's petition for discretionary review to decide whether the court of appeals
appropriately interpreted the scope of Hawkins to be so limited. (9) I believe the court of
appeals correctly resolved this issue and would affirm its judgment.

 The court of appeals was correct to hold that Hawkins is not the be-all and end-all of
a units-of-prosecution analysis in every conceivable robbery case. The issue we addressed
in Hawkins was circumscribed: "[H]ow many robbery prosecutions may be brought when
an actor assaults more than one person in the course of stealing one item of property[?]" (10) 
We simply did not address the separate question of how many times an actor may be
convicted when, in a single action, he assaults the same person in more than one of the
statutorily prescribed ways in which such an assault may constitute a robbery. This latter
question is properly analyzed under our cases that describe how to determine legislative
intent with respect to allowable units of prosecution when an actor's conduct simultaneously
violates more than one subpart of the same penal statute against the same victim. (11) 
Assuming, therefore, that the allegations in Counts I and II of the indictment allege discrete,
statutorily alternative ways in which the appellant's act may have constituted an assault
against Chaney (and Counts III and IV likewise allege discrete, statutorily alternative ways
in which the appellant's act may have constituted an assault against Barker), then the
question of how many times the appellant may be punished for robbing Chaney based upon
that act (and of how many times he may likewise be punished for robbing Barker based on
that act) depends upon how we parse the language of Section 29.02 of the Penal Code in
order to gauge the gravamen of the offense. That is the way we have determined legislative
intent--the lynchpin of any multiple-punishments double jeopardy inquiry--in this context. (12)

 In Hawkins we reasoned that, "[s]ince robbery is a form of assault, the allowable unit
of prosecution for robbery should be the same as that for an assault." (13) But we have never
said that the number of victims is the only indicium of legislative intent with respect to
allowable units of prosecution for the offense of assault. And, with respect to the related
question of whether a jury must be unanimous with respect to its verdict in an assault
prosecution, (14) we concluded in Landrian that the Legislature intended that alternative
statutory methods of committing assault should be regarded as discrete offenses, requiring
jury unanimity with respect to each one separately. (15) I see no reason why we would not say
the same thing with respect to the assault statute when it comes to a double jeopardy units-of-prosecution analysis--that robbery by causing bodily injury and robbery by threatening or
placing the victim in fear of bodily injury or death are discretely actionable offenses. Indeed,
for all intents and purposes, we recently did say this. (16) Since the allowable units of
prosecution for robbery "should be the same as that for an assault," (17) it is more than plausible
to conclude, as the court of appeals did in this case, that the appellant may constitutionally
be punished for as many statutorily alternative ways that he robbed both Chaney and Barker
as the evidence will support.

 Section 29.02(a) of the Penal Code defines the offense of simple robbery. It reads:

 (a) A person commits an offense if, in the course of committing theft
as defined in Chapter 31 and with intent to obtain or maintain control of the
property, he:


 (1) intentionally, knowingly, or recklessly causes bodily
injury to another; or


 (2) intentionally or knowingly threatens or places
another in fear of imminent bodily injury or death. (18)


Aggravated robbery is the commission of such an offense in addition to certain aggravating
elements such as the fact that the bodily injury under Section 29.02(a)(1) was serious or that
the perpetrator used or exhibited a deadly weapon. (19) The gravamen of simple robbery is
clearly more than acquisitive conduct/acquisitive intent alone--that is, more than theft or
attempted theft. (20) There is also an assaultive component. The question presented is how to
define the gravamen of the simple robbery statute, and hence identify the legislative intent
with respect to allowable units of prosecution for that offense, taking due account of each
of these indispensable components.

 One aid in identifying the gravamen of an offense for jeopardy purposes, we have
confirmed, is the grammatical structure of the penal provision. (21) Grammatically, Subsections
(a)(1) and (a)(2) of Section 29.02 are elemental in the sense that they alternatively describe
the assaultive component of the offense of robbery; they alternatively supply the "main verb"
that principally defines the offense ("causes"/"threatens or "places in fear") and, in the case
of Subsection (a)(1), the direct object ("bodily injury"). (22) Neither subsection takes the form
of an adverbial phrase, which "[g]enerally" serves to describe mere manner and means of
committing an offense. (23) Instead, grammatically, although they are alternatively defined,
they are nevertheless essential to the offense.

 We have also observed that the gravamen of an offense may be identified by the
element of that offense that requires a completed act. (24) As presently written, the robbery
statute does not require a completed theft. (25) By contrast, the assaultive component must be
completed, albeit in either one of two ways. That they are alternative ways, however, hardly
means they constitute mere manner and means. (26) As presently written they are, if anything,
more essential to the offense of robbery than the comparatively inchoate element of
acquisitive conduct/intent. These considerations convince me that Subsections (a)(1) and
(a)(2) of Section 29.02 constitute at least a part of the gravamen of simple robbery and do not
merely designate alternative manner and means.

 By contrast, I might agree that Subsections (a)(1) and (a)(2) of Section 29.02
constitute mere manner and means of committing the assaultive component of robbery had
the Legislature written the statute to read, not as it presently does, but rather, as follows:

 (a) A person commits an offense if, in the course of committing theft
. . . and with intent to obtain and maintain control of the property, he
intentionally or knowingly engages in assaultive conduct:


 (1) by causing bodily injury to another; or


 (2) by threatening or placing another in fear of imminent
bodily injury or death.


The main verb of this hypothetical statute is the non-specific "engages," while the direct
object is "assaultive conduct." The act that must be completed is generalized "assaultive
conduct," while the specific types of assaultive conduct are introduced only by way of
adverbial phrases beginning with the preposition "by." Had the Legislature drafted the
statute in this way, it would have signaled to us that the gravamen of the offense of robbery
was undifferentiated assaultive conduct committed with an acquisitive intent and, more
germanely, that the particular type of assaultive conduct was not meant to be elemental--that
proof of either statutory manner and means of committing the assault would serve to establish
what would effectively constitute the single element of "engages in assaultive conduct." An
accused under this statute could be punished no more than once for a particular act, but the
jury would not have to be unanimous with respect to the particular statutory manner and
means by which that act accomplished the assaultive component of robbery. However, this
is not the way the Legislature chose to draft the robbery statute.

 I would affirm the judgment of the court of appeals.

FILED: May 14, 2014

PUBLISH
1. See Tex. Penal Code § 29.03(a)(1)-(2) ("A person commits [aggravated robbery] if he
commits robbery as defined in Section 29.02, and he . . . causes serious bodily injury to another [or]
uses or exhibits a deadly weapon[.]"); id. § 29.02(a)(1)-(2) ("A person commits an offense if, in the
course of committing theft . . . and with intent to obtain or maintain control of the property, he . . .
intentionally, knowingly, or recklessly causes bodily injury to another; or . . . . intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death."). 
2. 

 Counts I and II of the indictment read:


 THE GRAND JURY, for the County of Travis, State of Texas, duly selected,
empanelled [sic], sworn, charged, and organized as such at the July, 2009 Term, AD.,
of the 390th Judicial District Court for said County, upon its oath presents in and to
said Court at said term, that Michael Cooper, on or about the 16th day of July, 2009,
and before the presentment of this Indictment, in the County of Travis, and State of
Texas, did then and there, while in the course of committing theft of property and
with intent to obtain or maintain control of said property, intentionally, knowingly,
or recklessly cause serious bodily injury to Andrew Chaney by shooting his hand, and
the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit:
a firearm and a bat,


 COUNT II


 It is further presented in and to said court that on or about 16th day of July, 2009, in
the County of Travis, and State of Texas, Michael Cooper did then and there, while
in the course of committing theft of property and with intent to obtain or maintain
control of said property, intentionally or knowingly threaten or place Andrew Chaney
in fear of imminent bodily injury or death, and the said Michael Cooper did then and
there use or exhibit a deadly weapon, to-wit: a firearm and a bat[.]


It will be observed that Count I actually alleged two theories to elevate the robbery to an aggravated
robbery: both serious bodily injury and the use or exhibition of a deadly weapon. Count II alleged
only the use or exhibition of a deadly weapon. 
3. Counts III and IV of the indictment read:

 

COUNT III

 

 It is further presented in and to said court that on or about 16th of July, 2009, in the
County of Travis, and State of Texas, Michael Cooper did then and there, while in
the course of committing theft of property and with intent to obtain or maintain
control of said property, intentionally, knowingly, or recklessly cause serious bodily
injury to James Barker by hitting him in the head with a firearm or a bat, and the said
Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm
and a bat,


COUNT IV


 It is further presented in and to said court that on or about 16th day of July, 2009, in
the County of Travis, and State of Texas, Michael Cooper did then and there, while
in the course of committing theft of property and with intent to obtain or maintain
control of said property, intentionally or knowingly threaten or place James Barker
in fear of imminent bodily injury or death, and the said Michael Cooper did then and
there use or exhibit a deadly weapon, to-wit: a firearm and a bat[.]


As with Count I, Count III actually alleged two theories to elevate the robbery to an aggravated
robbery: both serious bodily injury and the use or exhibition of a deadly weapon. Like Count II,
Count IV alleged only the use or exhibition of a deadly weapon.
4. Count V of the indictment, upon which the appellant was also convicted, alleged that he
committed aggravated robbery against a third individual, Alvin Duran. The appellant does not argue
that this conviction is jeopardy barred. Thus, he argues that he could only be punished for three
offenses: one each for the robberies of Chaney, Barker, and Duran.
5. Appellant's Brief on Direct Appeal at 25-36 (citing Ex parte Hawkins, 6 S.W.3d 554 (Tex.
Crim. App. 1999)).
6. Cooper v. State, 373 S.W.3d 821 (Tex. App.--Austin 2012).
7. Id. at 828.
8. Id. at 832.
9. See Appellant's Brief on Petition for Discretionary Review at 34 ("Petitioner asks this Court
to reaffirm its holding in Ex parte Hawkins, supra and reaffirm that the allowable unit of prosecution
in a robbery case is each victim.").
10. Hawkins, 6 S.W.3d at 554.
11. E.g., Vick v. State, 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999); Haight v. State, 137
S.W.3d 48, 50 (Tex. Crim. App. 2004); Gonzales v. State, 304 S.W.3d 838, 847-49 (Tex. Crim.
App. 2010); Jones v. State, 323 S.W.3d 885, 889-93 (Tex. Crim. App. 2010); Harris v. State, 359
S.W.3d 625, 629-32 (Tex. Crim. App. 2011); Loving v. State, 401 S.W.3d 642, 646-49 (Tex. Crim.
App. 2013). Cf. Pizzo v. State, 235 S.W.3d 711, 714-19 (Tex. Crim. App. 2007); Landrian v. State,
268 S.W.3d 532, 541 (Tex. Crim. App. 2008).
12. In Hawkins itself we observed that "the issue of multiple punishments in one trial is entirely
a question of legislative intent." 6 S.W.3d at 558. See also, e.g., Villanueva v. State, 227 S.W.3d
744, 747 (Tex. Crim. App. 2007) ("The ultimate inquiry is simply whether the Legislature intended
that the defendant suffer more than one punishment.").
13. Hawkins, 6 S.W.3d at 560.
14. See Gonzales, 304 S.W.3d at 848 (quoting Huffman v. State, 267 S.W.3d 902, 905 (Tex.
Crim. App. 2008), for the proposition that "double-jeopardy and jury-unanimity issues constitute
'closely intertwined strands of our jurisprudence'").
15. Landrian, 268 S.W.3d at 540.
16. See Ex parte Denton, 399 S.W.3d 540, 546 (Tex. Crim. App. 2013) (quoting Landrian, 268
S.W.3d at 537, in a double jeopardy case for the proposition that, besides the number of victims,
"[w]e have also held that '[t]he gravamen of the offense of aggravated assault is the specific type of
assault defined in [Tex. Penal Code] Section 22.01 [Assault]'").
17. Hawkins, 6 S.W.3d at 560.
18. Tex. Penal Code § 29.02(a).
19. Tex. Penal Code § 29.03(a).
20. It is not necessary to establish a completed theft to obtain a conviction for robbery. Hawkins,
6 S.W.3d at 559-60. 
21. Harris, 359 S.W.3d at 630.
22. Jones, 323 S.W.3d at 890-91.
23. Id. at 891.
24. Loving, 401 S.W.3d at 647.
25. Hawkins, 6 S.W.3d at 559-60; Jones, 323 S.W.3d at 890.
26. Indeed, apart from the added acquisitive conduct/intent element, the robbery statute is
practically indistinguishable from the simple assault statute. In Landrian, we construed the simple
assault statute to entail two separate offenses corresponding to the statutory alternatives of bodily
injury and threat:


 [A]ggravated assault under each distinct assaultive crime [as defined by the simple
assault statute, Tex. Penal Code § 22.01(a)] is a separate crime: aggravated assault
with the underlying crime of assault by causing bodily injury and aggravated assault 
with the underlying crime of assault by threat. The first is a result-oriented offense
and the second is a conduct-oriented offense.


268 S.W.3d at 540 (citations omitted).