

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1022-12

**MICHAEL COOPER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### TRAVIS COUNTY

**PRICE, J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.**

### DISSENTING OPINION

The appellant was convicted of five counts of aggravated robbery committed against

a total of three different victims, all stemming from events that occurred during the course

of a single home invasion.[1] Two of the convictions, corresponding to Counts I and II of the

---

[1] *See* TEX. PENAL CODE § 29.03(a)(1)-(2) ("A person commits [aggravated robbery] if he commits robbery as defined in Section 29.02, and he . . . causes serious bodily injury to another [or] uses or exhibits a deadly weapon[.]"); *id.* § 29.02(a)(1)-(2) ("A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another; or . . . . intentionally or

indictment, involved separate theories of the underlying robbery (robbery by causing bodily injury versus robbery by threatening or placing another in fear of imminent bodily injury or death) perpetrated against one Andrew Chaney.[2] Two other convictions, corresponding to Counts III and IV of the indictment, involved the same two theories of the underlying robbery (robbery by causing bodily injury versus robbery by threatening or placing another in fear of bodily injury or death) perpetrated against one James Barker.[3]

---

knowingly threatens or places another in fear of imminent bodily injury or death.").

[2] Counts I and II of the indictment read:

**THE GRAND JURY**, for the County of Travis, State of Texas, duly selected, empanelled [sic], sworn, charged, and organized as such at the July, 2009 Term, AD., of the 390th Judicial District Court for said County, upon its oath presents in and to said Court at said term, that Michael Cooper, on or about the 16th day of July, 2009, and before the presentment of this Indictment, in the County of Travis, and State of Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause serious bodily injury to Andrew Chaney by shooting his hand, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat,

#### COUNT II

It is further presented in and to said court that on or about 16th day of July, 2009, in the County of Travis, and State of Texas, Michael Cooper did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Andrew Chaney in fear of imminent bodily injury or death, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat[.]

It will be observed that Count I actually alleged *two* theories to elevate the robbery to an aggravated robbery: both *serious* bodily injury *and* the use or exhibition of a deadly weapon. Count II alleged only the use or exhibition of a deadly weapon.

[3] Counts III and IV of the indictment read:

On appeal, the appellant argued that he could not be convicted twice for robbing Chaney; nor could he be convicted twice for robbing Barker. Instead, the appellant maintained, he could only be punished for as many robberies as there were victims.[4] In the appellant's view, this Court's opinion in *Ex parte Hawkins* essentially occupied the field when it comes to determining allowable units of prosecution for robbery offenses when we

---

**COUNT III**

It is further presented in and to said court that on or about 16th of July, 2009, in the County of Travis, and State of Texas, Michael Cooper did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause serious bodily injury to James Barker by hitting him in the head with a firearm or a bat, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat,

**COUNT IV**

It is further presented in and to said court that on or about 16th day of July, 2009, in the County of Travis, and State of Texas, Michael Cooper did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place James Barker in fear of imminent bodily injury or death, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat[.]

As with Count I, Count III actually alleged *two* theories to elevate the robbery to an aggravated robbery: both *serious* bodily injury *and* the use or exhibition of a deadly weapon. Like Count II, Count IV alleged only the use or exhibition of a deadly weapon.

[4] Count V of the indictment, upon which the appellant was also convicted, alleged that he committed aggravated robbery against a third individual, Alvin Duran. The appellant does not argue that this conviction is jeopardy barred. Thus, he argues that he could only be punished for three offenses: one each for the robberies of Chaney, Barker, and Duran.

held that the State may punish for as many victims as were assaulted during an incident.[5]

From this premise the appellant reasoned that, while he could be convicted separately of robbing both Chaney and Barker, he could only be convicted of robbing each of them once, for a total of two convictions. The Third Court of Appeals rejected this argument.[6] The court of appeals held that, consistently with this Court's precedents, the number of victims should not be regarded as the *only* determinant in a units-of-prosecution analysis.[7] Accordingly, the court of appeals affirmed all of the convictions.[8] We granted the Appellant's petition for discretionary review to decide whether the court of appeals appropriately interpreted the scope of *Hawkins* to be so limited.[9] I believe the court of appeals correctly resolved this issue and would affirm its judgment.

The court of appeals was correct to hold that *Hawkins* is not the be-all and end-all of a units-of-prosecution analysis in every conceivable robbery case. The issue we addressed in *Hawkins* was circumscribed: "[H]ow many robbery prosecutions may be brought when

---

[5] Appellant's Brief on Direct Appeal at 25-36 (citing *Ex parte Hawkins*, 6 S.W.3d 554 (Tex. Crim. App. 1999)).

[6] *Cooper v. State*, 373 S.W.3d 821 (Tex. App.—Austin 2012).

[7] *Id*. at 828.

[8] *Id*. at 832.

[9] *See* Appellant's Brief on Petition for Discretionary Review at 34 ("Petitioner asks this Court to reaffirm its holding in Ex parte Hawkins, supra and reaffirm that the allowable unit of prosecution in a robbery case is each victim.").

an actor assaults more than one person in the course of stealing one item of property[?]"[10] We simply did not address the *separate* question of how many times an actor may be convicted when, in a single action, he assaults the *same* person in more than one of the statutorily prescribed ways in which such an assault may constitute a robbery. This latter question is properly analyzed under our cases that describe how to determine legislative intent with respect to allowable units of prosecution when an actor's conduct simultaneously violates more than one subpart of the same penal statute against the same victim.[11] Assuming, therefore, that the allegations in Counts I and II of the indictment allege discrete, statutorily alternative ways in which the appellant's act may have constituted an assault against Chaney (and Counts III and IV likewise allege discrete, statutorily alternative ways in which the appellant's act may have constituted an assault against Barker), then the question of how many times the appellant may be punished for robbing Chaney based upon that act (and of how many times he may likewise be punished for robbing Barker based on that act) depends upon how we parse the language of Section 29.02 of the Penal Code in order to gauge the gravamen of the offense. That is the way we have determined legislative

---

[10] *Hawkins*, 6 S.W.3d at 554.

[11] *E.g.*, *Vick v. State*, 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999); *Haight v. State*, 137 S.W.3d 48, 50 (Tex. Crim. App. 2004); *Gonzales v. State*, 304 S.W.3d 838, 847-49 (Tex. Crim. App. 2010); *Jones v. State*, 323 S.W.3d 885, 889-93 (Tex. Crim. App. 2010); *Harris v. State*, 359 S.W.3d 625, 629-32 (Tex. Crim. App. 2011); *Loving v. State*, 401 S.W.3d 642, 646-49 (Tex. Crim. App. 2013). *Cf. Pizzo v. State*, 235 S.W.3d 711, 714-19 (Tex. Crim. App. 2007); *Landrian v. State*, 268 S.W.3d 532, 541 (Tex. Crim. App. 2008).

intent—the lynchpin of any multiple-punishments double jeopardy inquiry—in this context.[12]

In *Hawkins* we reasoned that, "[s]ince robbery is a form of assault, the allowable unit of prosecution for robbery should be the same as that for an assault."[13] But we have never said that the number of victims is the *only* indicium of legislative intent with respect to allowable units of prosecution for the offense of assault. And, with respect to the related question of whether a jury must be unanimous with respect to its verdict in an assault prosecution,[14] we concluded in *Landrian* that the Legislature intended that alternative statutory methods of committing assault should be regarded as discrete offenses, requiring jury unanimity with respect to each one separately.[15] I see no reason why we would not say the same thing with respect to the assault statute when it comes to a double jeopardy units-of-prosecution analysis—that robbery by causing bodily injury and robbery by threatening or placing the victim in fear of bodily injury or death are discretely actionable offenses. Indeed,

---

[12]

In *Hawkins* itself we observed that "the issue of multiple punishments in one trial is entirely a question of legislative intent." 6 S.W.3d at 558. *See also, e.g.*, *Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007) ("The ultimate inquiry is simply whether the Legislature intended that the defendant suffer more than one punishment.").

[13]

*Hawkins*, 6 S.W.3d at 560.

[14]

*See Gonzales*, 304 S.W.3d at 848 (quoting *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008), for the proposition that "double-jeopardy and jury-unanimity issues constitute 'closely intertwined strands of our jurisprudence'").

[15]

*Landrian*, 268 S.W.3d at 540.

for all intents and purposes, we recently *did* say this.[16]  Since the allowable units of

prosecution for robbery "should be the same as that for an assault,"[17] it is more than plausible

to conclude, as the court of appeals did in this case, that the appellant may constitutionally

be punished for as many statutorily alternative ways that he robbed both Chaney and Barker

as the evidence will support.

Section 29.02(a) of the Penal Code defines the offense of simple robbery.  It reads:

> (a)  A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
>
> > (1)  intentionally, knowingly, or recklessly causes bodily injury to another; or
> >
> > (2)  intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[18]

Aggravated robbery is the commission of such an offense in addition to certain aggravating

elements such as the fact that the bodily injury under Section 29.02(a)(1) was *serious* or that

the perpetrator used or exhibited a deadly weapon.[19]  The gravamen of simple robbery is

---

[16] *See Ex parte Denton*, 399 S.W.3d 540, 546 (Tex. Crim. App. 2013) (quoting *Landrian*, 268 S.W.3d at 537, in a double jeopardy case for the proposition that, besides the number of victims, "[w]e have also held that '[t]he gravamen of the offense of aggravated assault is the specific type of assault defined in [Tex. Penal Code] Section 22.01 [Assault]'").

[17] *Hawkins*, 6 S.W.3d at 560.

[18] TEX. PENAL CODE § 29.02(a).

[19] TEX. PENAL CODE § 29.03(a).

clearly more than acquisitive conduct/acquisitive intent alone—that is, more than theft or attempted theft.[20] There is also an assaultive component. The question presented is how to define the gravamen of the simple robbery statute, and hence identify the legislative intent with respect to allowable units of prosecution for *that* offense, taking due account of each of these indispensable components.

One aid in identifying the gravamen of an offense for jeopardy purposes, we have confirmed, is the grammatical structure of the penal provision.[21] Grammatically, Subsections (a)(1) and (a)(2) of Section 29.02 are elemental in the sense that they alternatively describe the assaultive component of the offense of robbery; they alternatively supply the "main verb" that principally defines the offense ("causes"/"threatens or "places in fear") and, in the case of Subsection (a)(1), the direct object ("bodily injury").[22] Neither subsection takes the form of an adverbial phrase, which "[g]enerally" serves to describe mere manner and means of committing an offense.[23] Instead, grammatically, although they are alternatively defined, they are nevertheless essential to the offense.

We have also observed that the gravamen of an offense may be identified by the

---

[20] It is not necessary to establish a completed theft to obtain a conviction for robbery. *Hawkins*, 6 S.W.3d at 559-60.

[21] *Harris*, 359 S.W.3d at 630.

[22] *Jones*, 323 S.W.3d at 890-91.

[23] *Id*. at 891.

element of that offense that requires a completed act.[24] As presently written, the robbery statute does not require a completed theft.[25] By contrast, the assaultive component must be completed, albeit in either one of two ways. That they are alternative ways, however, hardly means they constitute mere manner and means.[26] As presently written they are, if anything, more essential to the offense of robbery than the comparatively inchoate element of acquisitive conduct/intent. These considerations convince me that Subsections (a)(1) and (a)(2) of Section 29.02 constitute at least a part of the gravamen of simple robbery and do not merely designate alternative manner and means.

By contrast, I might agree that Subsections (a)(1) and (a)(2) of Section 29.02 constitute mere manner and means of committing the assaultive component of robbery had the Legislature written the statute to read, not as it presently does, but rather, as follows:

---

[24] *Loving*, 401 S.W.3d at 647.

[25] *Hawkins*, 6 S.W.3d at 559-60; *Jones*, 323 S.W.3d at 890.

[26] Indeed, apart from the added acquisitive conduct/intent element, the robbery statute is practically indistinguishable from the simple assault statute. In *Landrian*, we construed the simple assault statute to entail two separate offenses corresponding to the statutory alternatives of bodily injury and threat:

> [A]ggravated assault under each distinct assaultive crime [as defined by the simple assault statute, TEX. PENAL CODE § 22.01(a)] is a separate crime: aggravated assault with the underlying crime of assault by causing bodily injury and aggravated assault with the underlying crime of assault by threat. The first is a result-oriented offense and the second is a conduct-oriented offense.

268 S.W.3d at 540 (citations omitted).

> (a) A person commits an offense if, in the course of committing theft . . . and with intent to obtain and maintain control of the property, he intentionally or knowingly engages in assaultive conduct:
>
> > (1) by causing bodily injury to another; or
> >
> > (2) by threatening or placing another in fear of imminent bodily injury or death.

The main verb of this hypothetical statute is the non-specific "engages," while the direct object is "assaultive conduct." The act that must be completed is generalized "assaultive conduct," while the specific types of assaultive conduct are introduced only by way of adverbial phrases beginning with the preposition "by." Had the Legislature drafted the statute in this way, it would have signaled to us that the gravamen of the offense of robbery was undifferentiated assaultive conduct committed with an acquisitive intent and, more germanely, that the particular type of assaultive conduct was not meant to be elemental—that proof of either statutory manner and means of committing the assault would serve to establish what would effectively constitute the single element of "engages in assaultive conduct." An accused under this statute could be punished no more than once for a particular act, but the jury would not have to be unanimous with respect to the particular statutory manner and means by which that act accomplished the assaultive component of robbery. However, this is not the way the Legislature chose to draft the robbery statute.

I would affirm the judgment of the court of appeals.

FILED:      May 14, 2014
PUBLISH