**Margaret Renee MAYER, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14–14–01011–CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed April 7, 2016

Rehearing and Rehearing En Banc
Overruled June 2, 2016

Cheri Duncan, Houston, TX, for Appellant.

Dan McCrory, Houston, TX, for State.

Panel consists of Justices Jamison, Donovan, and Brown.

**OPINION**

Marc W. Brown, Justice

A jury convicted Margaret Mayer of the offense of failure to stop and render aid in a case involving death.[1]  Appellant chal-

---

1. Tex. Transp. Code Ann. § 550.021 (West     Supp.2015).

lenges her conviction in five issues. We affirm.

## Factual and Procedural Background

On the night of December 1, 2013, complainant Chelsea Norman was struck by a vehicle while riding her bicycle on Waugh Drive in Houston. The vehicle that struck Norman did not stop. After the accident, two other motorists noticed Norman lying in the street and called 911. Norman entered the hospital with serious injuries, including swelling in her brain. Four days later, Norman died.

Prior to the accident, appellant was at a bar in the Montrose area of Houston. Appellant left the bar with David Wilkinson, who testified that he intended to follow appellant in his own car as she drove home. Wilkinson discovered that he needed to gas up his car, but did not know the area well, so he decided to park his car and walk in search of a gas station. Appellant attempted to parallel park her truck near Wilkinson's, but sideswiped his car as she was parking. Wilkinson walked away in search of the gas station. When he returned, appellant was gone. Wilkinson drove around looking for appellant, but could not find her. His attempts to contact her by phone were also unsuccessful. Wilkinson finally proceeded to his own home.

Later that night, Wilkinson received a phone call from appellant, who asked Wilkinson to come over to her apartment. When Wilkinson arrived, appellant was outside with her neighbor, Jamie Bollinger, examining her truck. Wilkinson testified that appellant was visibly distraught and that she said she could not remember what had happened, but that she thought she hit something on her way home. Wilkinson noticed that the truck's windshield was damaged and also saw a piece of blue cloth on the ground in front of the truck.

Bollinger testified that defendant was stumbling when she arrived at home and was visibly upset because she thought she had hit something on her way there. Bollinger noticed damage to the truck's windshield and passenger mirror. Using a flashlight to inspect the damage further, Bollinger noticed damage to the bumper of the truck and a square piece of denim lodged in the corner of the truck's hood. Near the truck's headlight, Bollinger discovered a "decent amount" of "yellow goopy material."

The next day, Bollinger saw a Facebook post describing the accident involving Norman and shared this information with appellant. Appellant told Bollinger that she would turn herself in. After noticing a few days later that appellant had the windshield and headlights on her truck repaired, Bollinger inferred that appellant was not going to turn herself in, so she decided to contact the police. Bollinger called Crime Stoppers and reported her suspicion that appellant had been involved in the accident that killed Norman. The day after the accident, appellant also told her coworker, Kellie Clark, that she had been involved in an accident and believed that she hit something or someone after getting lost on her way home. After seeing the news reports about complainant's accident, Clark also called the police and told them that she thought appellant had hit Norman that night.

After receiving these tips, police pursued appellant as a suspect. Detective Y. Estrada interviewed Clark and gathered a description of appellant's vehicle as well as contact information for appellant. Detective Estrada went to appellant's workplace to speak with her and recorded their conversation. Appellant told Detective Estrada that she was "trashed" on the night of December 1 and had been involved in a car accident. Detective Estrada also exam-

ined appellant's truck and photographed it. Detective Estrada saw no damage to the windshield because it had been replaced. Detective Estrada did, however, notice damage to the mirror on the passenger side of the truck as well as some damage to the hood of the truck and to the bumper and undercarriage of the truck. This damage appeared to be consistent with damage from a collision between a vehicle and a cyclist. Detective Estrada obtained a search warrant for the truck, which was eventually seized and brought to the Houston Police Department's vehicle examination building.

At the vehicle examination building, Officer A. Holmes took photos, collected paint samples, and collected a swab of the yellow substance. Officer Holmes testified that the substance appeared to him to be body tissue or body fluid of some kind. The swab was prepared and the DNA contained in the swab was profiled by lab technician Ben Cambridge and compared to a known sample of Chelsea Norman's DNA. Analyst Lloyd Halsell testified that Norman could not be excluded as a contributor to the sample and that the genetic markers found in the substance and in a known sample of Norman's DNA matched across 15 locations. Halsell also testified that the probability of observing Norman's exact DNA profile was one in 820 quintillion, meaning that in order to find such a combination, one would have to "put together approximately 100 billion earths." In support of Hal sell's testimony, the State offered into evidence the third of three reports setting out the results of the DNA testing. Appellant objected to the admission of this report, renewing her objection from a pre-trial "motion in limine," which asserted that, under the Confrontation Clause, the report should not be admitted unless appellant was allowed to cross-examine Peter Lentz, a former employee of the crime lab where the testing

was performed. The trial court overruled appellant's objection. Later in Halsell's testimony, the State offered the first and second reports that corresponded with earlier testing of samples from the same swab. Appellant did not object to the admission of these reports.

Finally, Devin Stasicha, a forensic scientist with the Texas Department of Public Safety Houston Regional Crime Lab, testified regarding foreign paint samples found on both appellant's truck and Norman's bicycle. Stasicha testified that the unknown paint samples collected from the truck did not originate from the bicycle. Likewise, Stasicha testified, the unknown paint samples on the bicycle did not originate from the truck. Stasicha testified that there was no evidence that any paint had transferred from the bicycle to the truck or vice versa.

The jury returned a verdict of guilty and the trial court assessed a sentence of 15 years in the Texas Department of Criminal Justice, Institutional Division. Appellant timely filed a notice of appeal.

### Analysis

Appellant presents five issues on appeal: (1) that the State's evidence was legally and factually insufficient to prove that appellant intended to be involved or knew she was involved in an accident that resulted in a person's death; (2) that the State's evidence was factually insufficient to prove beyond a reasonable doubt that appellant intended to be involved or knew she was involved in this particular collision with complainant; (3) that the unavailability of factual sufficiency review on direct appeal of criminal convictions in Texas violates the Constitutional guarantees of Equal Protection and Due Process; (4) that the trial court violated appellant's Confrontation Clause rights when it admitted testi-

mony and reports about the results of DNA testing in spite of evidence that a discredited former lab employee handled the DNA samples; (5) that the jury charge incorrectly defined the applicable mens rea, then incorrectly applied the mens rea requirements, effectively making failure to stop and render aid a strict liability offense.

## A. Sufficiency of the Evidence

■ Appellant's first two issues ask this court to conduct a factual sufficiency review of the evidence adduced at trial using a standard that has been expressly overruled by the Court of Criminal Appeals. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App.2010). Prior to 2010, Texas courts maintained two different standards for evidentiary sufficiency review in criminal cases—the so-called "factual sufficiency" standard of *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim. App. 1996), and the "legal sufficiency" standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Finding that the two standards had become virtually indiscernible, the Court of Criminal Appeals explicitly overruled *Clewis* and adopted the *Jackson* legal sufficiency standard as "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 912. Despite this clear pronouncement in *Brooks*, however, appellant asks us to effectively resurrect *Clewis* by applying its factual sufficiency standard to our review of her conviction. As an intermediate appellant court, we are without power to do so and are "bound to follow the law as declared by the state's highest courts." *LeBlanc v. State*, 138 S.W.3d 603, 606 (Tex.App.–Houston [14th Dist.] 2004,

no pet.). When, in a situation such as this, the Court of Criminal Appeals "has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation." *Mason v. State*, 416 S.W.3d 720, 728 n. 10 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd). Accordingly, we decline to consider appellant's contention that the high court's interpretation of the law runs afoul of the Due Process and Equal Protection Clauses of the United States Constitution. Appellant's third issue is overruled.

Because we decline to second-guess the *Brooks* decision and "impose a different declaration of the law," we must also overrule appellant's second issue, as well as appellant's first issue—to the extent that it asks us to perform a factual sufficiency review of the evidence. *Rodriguez v. State*, 47 S.W.3d 86, 95 (Tex.App.–Houston [14th Dist.] 2001, pet. ref'd) (Baird, J. dissenting).

■ Having overruled appellant's requests for factual sufficiency review, we address her remaining allegation that the evidence was legally insufficient to prove that she possessed the requisite culpable mental state for the crime for which she was convicted. Appellant contends that the State was required to prove that she "intended or knew" that she was involved in an accident that resulted in a person's death. Appellant's characterization of the proper mens rea is incorrect and relies on case law interpreting a prior version of the statute criminalizing the failure to stop and render aid.

In 1979, the Court of Criminal Appeals addressed the lack of an expressly-stated mens rea in the precursor to the current failure to stop and render aid statute. *Goss v. State*, 582 S.W.2d 782, 785 (Tex. Crim.App.1979). In keeping with the requirements of section 6.02 of the Texas

Penal Code, which requires a culpable mental state for any criminal offense that does not plainly dispense with a mental element, the Court held that "the culpable mental state for the offense of failing to stop and render aid is that the accused had knowledge of the circumstances surrounding his conduct, i.e. had knowledge that the accident occurred." *Id.* (internal citations omitted); Act of June 14, 1973, 63rd Leg., R.S., ch. 399 § 1, 1973 Tex. Gen. Law 892 (amended 2005) (current version at Tex. Penal Code § 6.02(b), (c) (West 2015)). In 2008, the Court again discussed the failure to stop and render aid statute, opining that it described a "circumstances surrounding the conduct" offense, which meant that the culpable mental state must attach to the circumstances that make the alleged act criminal. *Huffman v. State,* 267 S.W.3d 902, 908 (Tex.Crim.App.2008). In dicta, the Court stated that the circumstances surrounding the criminal conduct of failing to stop were (1) an accident and (2) victims.[2] *Id.* Appellant now utilizes the Court's statement to support her argument that the State was required to prove both that she knew that she was involved in an accident—as required by *Goss*—and that she knew that the accident caused or was likely to cause the death or injury of a person.

Even assuming that the Court's dictum in *Huffman* stands for the proposition that the State must prove a culpable mental state with respect to both the accident and the injury or death of a person, that interpretation of the failure to stop and render aid statute can no longer persist. In September 2013—three months prior to the accident that caused the complainant's death—the statute was amended. The amended statute reads:

(a) The operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:

(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;

*(3) immediately determine whether a person is involved in an accident, and if a person is involved in the accident;*

(4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

Act of June 14, 2013, 83rd Leg., R.S., ch. 1099, 2013 Tex. Gen. Law 2608 (codified at Tex. Transp. Code Ann. § 550.021(a) (West 2015)) (emphasis added). Although the statute still does not contain an expressly-stated mens rea, we find no fault with the continuing use of the culpable mental state enunciated in *Goss* — knowledge that the accident occurred. 582 S.W.2d at 785. Where we must deviate from *Huffman*, however, is in the interpretation of the statute that requires the State to prove that the operator of the vehicle knew that the accident in which she was involved resulted in the death or injury of a person before the State can show that she shirked her duty to stop and render aid. This reading of the statute renders the newly-added section (a)(3) mere surplusage. If the operator of a vehicle involved in an accident need only stop if she knows that she has been in-

---

**2.** The central issue in the *Huffman* case was not the culpable mental state required for the offense of failure to stop and render aid, but rather what "unit of prosecution" should be used in charging a defendant with that offense in order to avoid double jeopardy. 267

S.W.3d at 908. After considering what the gravamen of the offense was, the Court held that failing to stop, failing to return, and failing to remain at the scene are alternate methods of committing the same offense, not separate offenses. *Id.* at 909.

volved in a deadly accident, then ostensibly she has already determined whether a person is involved, eliminating the need for the mandate in section (a)(3). In construing a statute, we generally presume that every word ... has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex.Crim.App.1997). We cannot regard the presence of section (a)(3) as mere surplusage; "it means something." *Potter v. U S*, 155 U.S. 438, 446, 15 S.Ct. 144, 39 L.Ed. 214 (1894).

Further, the Legislature explicitly identified and contemplated the "loophole" in the prior version of the statute that could be interpreted as requiring the State to show that the driver knew that the accident involved a person before it may secure a conviction for failure to stop and render aid. In its analysis of House Bill 3668, the Transportation Committee identified a situation of growing concern in which motorists who fail to stop and render aid claim that they did not know they had hit a person. House Comm. on Transp., Bill Analysis, Tex. H.B. 3668, 83rd Leg., R.S. (2013). According to the committee's analysis, supporters of the addition of section (a)(3) believed that:

> The provision would eliminate the kind of excuses that are growing common among alleged drunk drivers. If they

flee an accident and sober up, they face a lesser charge by claiming that they thought they had merely struck an animal or an inanimate object—not another person.[3]

*Id.* In refuting that she had any knowledge of hitting a person on the night of the accident, appellant did just that—claimed that she thought she hit an inanimate object. In her brief, appellant describes herself as "steadfast in telling friends and co-workers that she thought she hit a tree, and that she wished that she could remember what happened that night." It appears then that section (a)(3) does, in fact, "mean[ ] something," particularly in a case like this. *Potter*, 155 U.S. at 446, 15 S.Ct. 144.

Having considered, first and foremost, the statute's text, as well as the Legislature's intent in effectuating the most recent change, we reject appellant's characterization of the culpable mental state that the State was required to prove at trial. We therefore consider whether the evidence was legally sufficient to prove that appellant knew that she was involved in an accident, the mental state that triggered her duty to stop, investigate, and render aid.

When engaging in a review of the legal sufficiency of the evidence supporting a conviction, we "examine all of the evidence in the light most favorable to the verdict

---

**3.** While it is not clear how many defendants actually faced a lesser charge by claiming ignorance regarding the involvement of another person in their accidents, case law from around the State indicates that this is, indeed, a common excuse among drunk and sober drivers alike. *See, e.g., Salazar v. State*, No. 13–12–00690, 2014 WL 4049883, at *2 (Tex. App.–Corpus Christi Aug. 14, 2014, no pet.) (mem. op., not designated for publication); *Barnette v. State*, No. 08–09–00147–CR, 2011 WL 486949, at *2 (Tex.App.—El Paso Feb. 9, 2011, pet. ref'd) (mem. op., not designated for publication); *Spinks v. State*, No. 06–10–

00230, 2011 WL 6009593, at *4 (Tex.App.–Texarkana Dec. 2, 2011, no pet.) (mem. op., not designated for publication); *Marez v. State*, No. 13–06–476–CR, 2007 WL 2333155, at *2 (Tex.App.—Corpus Christi Aug. 16, 2007, pet. ref'd) (mem. op., not designated for publication); *Goar v. State*, 68 S.W.3d 269, 272 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd); *Dobrinski v. State*, No. 14–00–00039–CR, 2001 WL 893289, at *2 (Tex.App.–Houston [14th Dist.] Aug. 9, 2001, pet. ref'd) (mem. op., not designated for publication); *Goforth v. State*, 92 Tex.Crim. 200, 241 S.W. 1027, 1028 (App.1922).

and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Price v. State,* 456 S.W.3d 342, 347 (Tex.App.–Houston [14th Dist.] 2015, pet. ref'd). "Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder." *Price,* 456 S.W.3d at 347.

The evidence adduced at trial supports a conclusion that is unequivocal—appellant knew that she was involved in an accident the night of December 1. Wilkinson, Clark, Bollinger, and Estrada all testified that appellant told them that she was involved in an accident. Although appellant was not sure of the nature of the accident due to her intoxication, she nonetheless reiterated countless times, as she does now on appeal, that she knew she was involved in an accident. As discussed at length, it does not matter whether appellant knew that she had hit a person with her vehicle or whether she knew how extensively that person was injured. *See McCown v. State,* 192 S.W.3d 158, 162–63 (Tex.App.–Fort Worth 2006, pet. ref'd) ("There is no requirement that an accused must have positive, subjective knowledge of the nature or extent of injury resulting from the collision. Such a prerequisite would defeat the public interest."). In order to be subject to the duty to stop, investigate, and then render aid, appellant need only have known that an accident occurred. Examining this evidence in the light most favorable to the verdict, we hold that the evidence was sufficient to prove that appellant possessed this knowledge. Appellant's first issue is overruled.

## B. Confrontation Clause Violation

■ Appellant's fourth issue alleges a Confrontation Clause violation stemming from the admission of the results of DNA testing performed on the yellowish substance found on appellant's vehicle. Appellant contends that the results should not have been submitted without an opportunity to cross-examine a former employee of the forensic lab—Peter Lentz—because, she alleges, Lentz had previously been found to be tampering with samples in the lab. At trial, appellant cross-examined both the lab technician who performed the testing, Ben Cambridge, and the analyst who interpreted the test results and signed the ensuing report, Lloyd Halsell. Both Cambridge and Halsell testified that Lentz was not involved in the testing of the particular sample underlying the third report—the only report appellant objected to. There were three samples prepared and tested, of which only the first "involved [Lentz] to some degree." Appellant did not object to the admission of the report regarding the testing of this first sample. Nor did appellant object to the admission of the second report. When appellant objected to the admission of the third report, she complained that she should be afforded an opportunity to confront all the technicians who had any access to the samples—including Lentz—under *Bullcoming v. New Mexico,* 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). Appellant renews this argument on appeal, arguing that *Bullcoming* requires that Lentz have been available for cross-examination in order to fulfill the guarantees of the Confrontation Clause. We disagree.

■ In a case involving forensic analysis, "the accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Bullcoming,* 131 S.Ct. at 2710. In *Burch v. State,* the Court of Criminal

Appeals held that the Confrontation Clause also required that the defendant be afforded the opportunity to cross-examine the analyst who actually performed the tests, or at least one who observed the process of testing the particular sample at issue. 401 S.W.3d 634, 638 (Tex.Crim.App. 2013). Without the testimony of the analyst who performed or supervised the test, the Court wrote, "the defendant has no way to explore the types of corruption or missteps the Confrontation Clause was designed to protect against." *Id.* "The witness being called needs to have personal knowledge of the facts in issue—the specific tests and their execution." *Id.*

Appellant's Confrontation Clause rights were not violated in this case. Appellant cross-examined both the analyst who signed the report and the analyst who actually performed the test. Cambridge and Halsell's testimony established, at most, that there was some possibility that Lentz could have entered the room where the samples were held because he, like other employees of the lab, had a key to the room. Even if appellant had established that Peter Lentz had handled the third sample at some point in time, it does not mean "that everyone who laid hands on the evidence must be called." *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 311 n. 1, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The United States Supreme Court "explicitly refused to hold in *Melendez–Diaz* that 'anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Paredes v. State*, 462 S.W.3d 510, 515 (Tex. Crim.App.2015) (quoting *Melendez–Diaz*, 557 U.S. at 311 n. 1, 129 S.Ct. 2527). We decline to adopt a view that the Supreme Court explicitly rejected. Any questions about the validity of the testing process may be answered by an analyst who either performed or supervised the test. *See Burch*, 401 S.W.3d at 638. That analyst, Cambridge, testified in this case. Accordingly, we hold that the requirements of the Confrontation Clause have been satisfied. Appellant's fourth issue is overruled.

## C. Jury Charge Error

■ In her final issue, appellant alleges an error in the jury charge. Appellant first argues that the definitions of the relevant culpable mental states are incorrect. The charge defined both "intentionally" and "knowingly" with respect to the "nature of her conduct." Appellant contends that this is error because failure to stop and render aid is a "circumstances-of-conduct" crime rather than a nature-of-conduct crime. *Huffman*, 267 S.W.3d at 908. A correct definition of the culpable mental states, appellant argues, would have defined "intentionally" and "knowingly" with respect to the *circumstances* of her conduct rather than the nature of her conduct. Initially, we note that this complaint was not preserved at trial. The record indicates that appellant only objected to the application paragraph of the jury charge, not the abstract definitions. Because appellant failed to object to the abstract definitions of the culpable mental states, we may not reverse for this alleged jury charge error unless the record shows "egregious harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App.2005).

■ Generally, reversible error occurs in the giving of an abstract instruction "only when the instruction is an incorrect and misleading statement of law that the jury must understand in order to implement the commands of the application paragraph." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex.Crim.App.2012). The abstract definitions here are not incorrect as a matter of law. They track the

definitions of "intentionally" and "knowingly" found in the Penal Code. Tex. Penal Code § 6.02 (West 2015). Additionally, these culpable mental states in the charge only attach to the conduct of failing to stop a vehicle at the scene of the accident, not to any circumstances surrounding the conduct. The application paragraph does not include a mens rea attached to the circumstances of the conduct—involvement in an accident and existence of a victim who is reasonably likely to be injured or dead. Therefore, the definitions are not erroneous as used in this particular jury charge. Finding no error, we do not engage in a harm analysis.

■ Appellant makes a second claim of error regarding the application paragraph of the jury charge. Appellant objects to the lack of mens rea in the jury charge with regard to the circumstances of the offense—involvement in an accident and the existence of a gravely injured victim—which she argues made failure to stop and render aid a strict liability offense. As discussed previously, in order to convict a defendant of failure to stop and render aid, the State must prove beyond a reasonable doubt that appellant knew that she was involved in an accident and subsequently failed to stop, investigate, and render aid. At trial, appellant only objected to the lack of an instruction requiring a finding that appellant knew that it was reasonable likely that the victim—Chelsea Norman—was fatally injured as a result of the accident. Appellant requested that the charge be modified to read: "Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of December, 2013, in Harris County, Texas, the defendant, Margaret Renee Mayer, did then and there unlawfully, while driving or operating a vehicle, was involved in an accident *and knew that it* resulted in or that was reasonably likely to result in death to

Chelsea Norman ..." The trial court denied that request. Appellant renews that objection and request on appeal, and also alleges an additional error. Appellant contends that the jury charge should have also required a finding that she "intended or knew that she was involved in an accident with Chelsea Norman."

The trial court's failure to impose a knowledge requirement with respect to the likelihood of complainant's death was not error, as no such culpable mental state is required for conviction of failure to stop and render aid. Appellant is correct that the State is required to prove beyond a reasonable doubt that she possessed the requisite culpable mental state with respect to the circumstance of being involved in an accident. However, the jury charge, while certainly not ideal, does require the jury to find a culpable mental state. The jury was charged that it must find appellant guilty if she:

> "*intentionally or knowingly* failed to stop her vehicle at the scene of the accident or as close to the scene as possible, failed to return to the scene of said accident, failed to determine whether any person at the scene of said accident required aid, and failed to remain at the scene of said accident until the defendant had made arrangements for transporting Chelsea Norman to a physician or hospital for medical treatment, *it being apparent that said medical treatment was necessary* ..."

The State argues that knowledge of the accident itself, though not explicitly stated in the jury charge, is implied by the requirement that the jury find that, if it is apparent that medical treatment was necessary, appellant intentionally or knowingly failed to stop. Knowledge that medical treatment was necessary, the State argues, assumes knowledge that an accident has occurred. In support of its argument, the

State relies on the *Williams* case, which held that an indictment with the same operative language as was in the jury charge in this case was sufficient to charge the offense. *Williams v. State*, 600 S.W.2d 832, 833 (Tex.Crim.App.1980). We agree that *Williams* supports the validity of this jury charge. The State's argument is also supported by the *Abrego* opinion, in which the Court of Criminal Appeals held that a felony information was sufficient to charge a defendant with failure to stop and render aid when it alleged that the defendant "intentionally and knowingly failed to stop and render to the Complainant reasonable assistance, for which there was an apparent need ..." *Abrego v. State*, 596 S.W.2d 891, 893 (Tex.Crim.App.1980). "While not a model pleading," the *Abrego* court held, the information was compliant enough with *Goss* so as to not be "fatally defective." *Id.* Given the state of the case law, we agree that the appropriate culpable mental state of knowledge of the circumstance— the accident—is implied by the application paragraph's inclusion of a culpable mental state for the failure to stop, investigate, and render aid. Although not a model jury charge, the application paragraph does not convert failure to stop and render aid into a strict liability offense, as the appellant argues. Therefore, the charge is not fatally defective. We overrule appellant's final issue.

## Conclusion

Having overruled all five of appellant's issues, we affirm the conviction.