**Affirmed and Memorandum Opinion filed December 15, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00018-CR

## QUINCY LEE JOHNSON, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1400858**

## M E M O R A N D U M   O P I N I O N

A jury convicted Quincy Lee Johnson, Jr., of murder and sentenced him to confinement for twenty-seven years. On appeal, appellant challenges the sufficiency of the evidence to support his conviction and the trial court's denial of his motions to quash the indictment and to suppress his confessions. We affirm.

## BACKGROUND

On October 1, 2010, the body of the complainant, Aileen Willis, was discovered in her home. Appellant was living with the complainant, his grandmother, at that time. It was later determined that she died on September 29. On September 30, appellant forged the complainant's signature on one of her checks and deposited $600 into his bank account. On October 2, appellant admitted to police to stealing the check and the forgery. Following the autopsy, which found injuries to the complainant's neck were consistent with manual strangulation, a warrant was obtained for appellant's arrest. Ultimately, appellant gave four statements to the police and in the last two admitted to putting his hand around the complainant's neck and moving her body after she was dead.

## SUFFICIENCY OF THE EVIDENCE

Because it would be dispositive, we first address appellant's second issue arguing the evidence was legally and/or factually insufficient to support his conviction. For the reasons stated in *Mayer v. State*, 494 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd), we decline to perform a factual sufficiency review of the evidence.

Regarding the legal sufficiency of the evidence to support his conviction, appellant argues the case against him was circumstantial and "the State failed to rule out every other reasonable hypothesis." When determining whether evidence is legally sufficient, we view all of the evidence, whether properly or improperly admitted, in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). We do not sit as a thirteenth juror and may not substitute our judgment for that of the fact-finder by re-evaluating weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the fact-finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from

basic facts to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Our duty as the reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

In his first statement, appellant admitted to stealing the check and forging the complainant's name. In the second statement, appellant said the complainant noticed the check was missing and became upset. According to appellant, she hit her head as she bumped into the back wall, then tripped on the chair and hit her neck on the edge of the table. The complainant then went to her bedroom and laid down. The position in which he found her deceased was the same as when he last saw her alive. He took her costume jewelry and put it in her trunk. Appellant denied ever touching the complainant.

When he gave the third statement to police, appellant's version changed:

> Then in the breakfast room she stood up and started to push me back and tell me to get out. And then she started to hit me and I was scared and I didn't know what to do or nothing. Just put my hand around her neck just trying to defend myself. And then after she was lying on the ground I dragged her into the bedroom because I was scared and I didn't know what to do.

Then, in his fourth statement, appellant told police:

> And at the point she got up and I was standing up and she came at me. And she was kinda pushing me back and she put her right hand — she grabbed my — she put her hands on my cheek. And with her right hand she started pushing me back and at that point I just lost control. I didn't know what I was doing. I put my left hand around her neck.

Appellant also re-enacted the scenario on the video. He demonstrated the complainant falling backward and him going down with her, with his left hand on her neck.

Dr. Kathryn Haden-Pinneri, the medical examiner, testified for the State.

3

According to Haden-Pinneri, the complainant suffered hemorrhaging in the neck area caused by a fracture of the thyroid cartilage that occurred at or near the time of death. She testified the most likely cause of the thyroid cartilage fractures was strangulation. Haden-Pinnari testified the cause of death was asphyxia due to strangulation, most likely caused by a hand. Haden-Pinnari estimated it would take "a matter of minutes." She testified the injury was inconsistent with the complainant's neck striking a table during a fall because the injury was bilateral.

Dr. Jennifer Love, a forensic anthropologist, also testified for the State. According to Love, the injury to the complainant's thyroid cartilage was cause by "a force that is applied to the neck from both side, a bilateral force so that it is breaking both the right and left horns [of the cartilage], so a squeezing[,] a constriction of the neck would cause that." Love also testified that a fall would not cause that injury.

Dr. Debra Pinto, a forensic anthropologist, testified for the Defense. Pinto testified that injuries such as those sustained by the complaint were generally found in manual strangulations or hangings but she could not rule out, with any medical certainty, blunt force trauma resulting from a fall.

Dr. Paul Radelat, a pathologist, also testified for the defense. Radelat stated there was a lack of evidence of any trauma or injury to the thyroid cartilage, the hyoid bone, or blockage of the airway. He would have expected the hyoid bone to be broken. Radelat testified the thyroid cartilage fractures were insignificant in terms of blocking the airway because the airway is behind the thyroid, which was not fractured. Radelat testified the fractures could have been caused by complainant falling the day before. Radelat would rule out death by manual strangulation. Based on the evidence of a prior heart attack, "terrible coronary artery disease," and "the fact that she was in a stressful situation," Radelat's opinion was that the complainant died of a heart attack.

As pertinent to this case, a person commits murder if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

4

Tex. Penal Code Ann. § 19.02(b)(1)-(2) (West 2011). When the charge authorizes the jury to convict on more than one theory, as it did in this case, we will uphold the verdict if the evidence is sufficient on any of the theories presented. *Hooper*, 214 S.W.3d at 14.

A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b) (West 2011). Proof of a mental state almost always depends upon circumstantial evidence. *Varnes v. State*, 63 S.W.3d 824, 833 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A jury may infer intent or knowledge from any facts that tend to prove its existence, including the acts, words, conduct of the accused, and the method of committing the offense. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

As described above, the jury heard evidence that the complainant was strangled to death. Appellant admitted to placing his hand around the complainant's neck and the jury saw appellant's re-enactment of the event. The conflicting evidence regarding the cause of death was for the jury to resolve. We therefore hold the evidence is legally sufficient to support the jury's finding beyond a reasonable doubt that appellant committed murder. We overrule appellant's second issue.

## MOTION TO QUASH

In his first issue, appellant claims the trial court erred in denying his motion to quash the indictment. We review de novo a trial court's denial of a motion to quash. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007).

The indictment charged appellant as follows:

. . . that in Harris County, Texas, QUINCY LEE JOHNSON JR., hereafter styled the Defendant, heretofore on or about SEPTEMBER 29, 2010, did then and there unlawfully, intentionally and knowingly cause the death of

5

ALLEEN WILLIS, hereinafter called the Complainant, by STRANGLING ALLEEN WILLIS WITH HIS HAND.

It is further presented that in Harris County, Texas, QUINCY LEE JOHNSON JR., hereinafter styled the Defendant, heretofore on or about SEPTEMBER 29, 2010, did then and there unlawfully intend to cause serious bodily injury to ALLEEN WILLIS, hereinafter called the Complainant, and did cause the death of the Complainant by intentionally and knowingly committing an act clearly dangerous to human life, namely STRANGLING ALLEEN WILLIS WITH HIS HAND.

Appellant moved to quash the indictment on the grounds the first and second paragraphs were "the functional equivalent of one another." Appellant argued the two paragraphs did not allege alternative theories of prosecution, as permitted under article 21.24(b) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 21.24(b) (West 2009). Subsection (b) provides "[a] count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense."

As applicable to this case, a person commits murder if he either intentionally or knowingly causes the death of an individual; or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. "[A]lternate pleading of the differing methods of committing one offense may be charged in one indictment." *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *see also Brock v. State*, 495 S.W.3d 1, 6 (Tex. App.—Waco 2016, pet. ref'd) (recognizing "an indictment may allege different methods of committing the same offense").

The indictment alleged that the same crime was committed either by intentionally and knowingly causing the complainant's death, or by intending to cause the complainant serious bodily injury and committing an act clearly dangerous to human life that caused her death. We hold the trial court did not err in denying appellant's motion to quash. Accordingly, appellant's first issue is overruled.

## MOTION TO SUPPRESS

In his final issue, appellant contends the trial court erred in denying his motion to

6

suppress.[1] The record reflects appellant filed a motion to suppress his video-taped and recorded confessions on the grounds they were involuntary. The motion suggests the confessions were involuntary because appellant was unaware he was the focus of an investigation for murder rather than forgery. In his brief, appellant claims the confessions were given involuntarily "due to improper law enforcement conduct, specifically threats and ongoing harassment given [his] age and low level of sophistication."

The only conduct by the officers that appellant complains of in his brief is their failure to inform him that forgery was not the only crime they were investigating. Appellant cites no authority that would support his position that this rendered his confessions involuntary and we are aware of none. Issue three is overruled

Having overruled all of appellant's issues, the judgment of the trial court is affirmed.


/s/    John Donovan
Justice


Panel consists of Justices Busby, Donovan, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

---

[1] The record before this court contains the trial court's written findings of fact and conclusions of law on the voluntariness of appellant's statement.