Jane Bland, Justice
A jury found Steven Curry guilty of the felony offense of failure to stop and render aid, and it assessed his punishment at six years' confinement. Curry appeals, contending that (1) the evidence is legally insufficient to support the jury's verdict, and (2) the trial court erred in failing to instruct the jury as to his mistake-of-fact defense. We affirm.
BACKGROUND
This case arises from a fatal hit-and-run accident. Steven Curry was indicted for the felony offense of failure to stop and render aid to bicyclist John Ambrose. See TEX. TRANSP. CODE § 550.021(a), (c)(1). At trial, Curry did not dispute that he struck Ambrose with his truck and failed to stop and render aid. He conceded that Ambrose died as a result of complications arising from the medical treatment required by his injuries.
Curry, however, contended that he did not know at the time of the collision that he had struck a person who required his assistance.
J. Saldivar, an officer with the La Porte Police Department, arrived at the accident scene in response to a 911 call. When Saldivar arrived, Ambrose was unresponsive and in dire need of medical attention. Saldivar called emergency medical services personnel to the scene, who in turn summoned Life Flight to transport Ambrose to a hospital.
Ambrose had suffered a severe traumatic brain injury. He remained unresponsive, and he required a ventilator and feeding tube. After his discharge from the hospital, he was placed in a nursing home, where he later died.
Harris County Precinct 8 deputies investigated the accident due to their expertise in accident reconstruction. They concluded that a vehicle struck Ambrose from behind while he was bicycling in the northbound lane of a two-lane road. They based this conclusion on:
• the direction of the trail of debris in the road, including debris from the bicycle, which was predominantly in the northbound lane;
• the damage to the bicycle's rear tire, which was bent out of shape and had a cracked rim;
• the lack of damage to the bicycle's front wheel;
• gouges or scrapes in the road made when the front wheel of the bicycle detached as a result of the impact and its front forks hit the pavement; and
• the location of Ambrose and his bicycle after the accident.
The deputies concluded that a driver traveling in the northbound lane could have seen Ambrose because his bicycle had reflectors that were visible at night. In addition, they concluded that the driver *166 who struck Ambrose was aware that the collision had occurred because the debris path showed that the driver had swerved.
The precinct circulated fliers seeking the public's help in identifying the driver who struck Ambrose. A citizen's tip lead deputies to Curry. The front passenger side of Curry's work truck was damaged, including its headlight assembly and the quarter panel. The headlight was broken. Police observed gouge marks on the fender beneath the broken headlight. R. Gallion, the La Porte Police Department crime scene investigator who examined the truck and processed the remaining evidence from the accident scene concluded that Curry struck Ambrose's bicycle from behind.
Curry testified that he did not think that he had been in an accident the night that he struck Ambrose. It was dark and the surrounding lighting was very poor around the accident scene. According to Curry, he did not see anything in the roadway and the passenger-side headlight suddenly burst. He "believed that somebody either threw something, or hit something, or something hit my truck, or that it was just something that had just came up off the road." He conceded that he knew there had been a collision of some sort. Curry braked but did not stop, explaining that it was dark and he feared the possibility of an "altercation with someone else."
Curry's girlfriend, Rhonda San Felipo, also testified. San Felipo and Curry were returning from dinner out at a restaurant that evening. She was following him in her own car. They were traveling between 30 and 40 miles per hour. San Felipo could see the roadway beyond Curry's truck. She did not see a bicyclist in the road. According to her, Curry's headlight shattered, his truck "jerked a little bit," and he braked. She thought "somebody threw a bottle at him" from a nearby parking lot. San Felipo did not see Ambrose after the impact.
Curry and San Felipo drove on a short distance to his home where they inspected the truck. Immediately afterward, they then returned to the accident scene in San Felipo's car to determine what had happened. They slowly drove by the area but they did not stop there. San Felipo said that she saw the silhouette of a man, whom she thought might have thrown the bottle. Aside from the remains of his headlight, Curry said that he did not see any debris in the road. Nor did he see Ambrose or his bike. He conceded, however, that he would have found Ambrose and known that Ambrose needed help if he and San Felipo had stopped and looked around for a few minutes.
Curry testified that he first learned of the true nature of the accident several days afterward when San Felipo called and told him of a newscast about it. He said that even then he still was not sure that he had struck Ambrose. Curry conceded, however, that he had contacted an attorney the day before San Felipo called him about the newscast.
Clyde Rooke, an accident reconstructionist, testified as a defense expert. He opined that Ambrose was not in the roadway immediately before the accident. Rooke concluded that Ambrose, whose blood alcohol content was more than twice the legal driving limit, had pulled out onto the road just as Curry's truck passed by him. Ambrose and his bike would have come to rest elsewhere if Curry had struck him from directly behind. In his opinion, the bicycle's rear tire was too low to damage the truck's headlight. Because Curry's truck sustained so little damage, Rooke opined that a reasonable person could have believed that it struck something other than a person or another vehicle.
*167 Rooke conceded that his testimony as to Ambrose's sudden entry onto the road was based on Curry's and San Felipo's statements, not any physical evidence. He also conceded that the physical evidence was consistent with the deputies' reconstruction of the accident. If Ambrose was already on the road when Curry approached, Rooke agreed that Curry would have been able to see Ambrose from a distance.
DISCUSSION
I. Legal sufficiency
Curry contends that the evidence is legally insufficient to prove that he knew he had been in an accident requiring him to stop and render aid. Curry argues that the evidence shows that he did not realize he had struck anyone and that he therefore did not knowingly fail to stop and render aid to any person.
A. Standard of review and applicable law
In a review for legal sufficiency, we view the evidence in the light most favorable to the verdict to determine whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. Gear v. State , 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (relying on Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). We defer to the jury's resolution of conflicts in the evidence. Isassi v. State , 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).
The statute criminalizing the failure to stop and render aid provides that drivers who are
involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:
(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;
(3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and
(4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.
TEX. TRANSP. CODE § 550.021(a). Among other things, drivers must "provide any person injured in the accident reasonable assistance." Id. § 550.023(3).
The State must prove that the driver knew that an accident had occurred. Huffman v. State , 267 S.W.3d 902, 908 (Tex. Crim. App. 2008). "Accident" is not statutorily defined and therefore bears its conventional meaning. See TEX. GOV'T CODE § 311.011(a). In general, the term encompasses any "unfortunate incident that happens unexpectedly and unintentionally, typically resulting in damage or injury." NEW OXFORD AMERICAN DICTIONARY 9 (3d ed. 2010). The term is equally broad in meaning, if not broader, in the context of automobile accidents. See Sheldon v. State , 100 S.W.3d 497, 500-04 (Tex. App.-Austin 2003, pet. ref'd) (affirming conviction for failure to stop and render aid; holding that "accident" encompassed situation in which passenger jumped to her death from car despite absence of collision); Rivas v. State , 787 S.W.2d 113, 114-16 (Tex. App.-Dallas 1990, no pet.) (same).
B. Analysis
Curry contends that the State had to prove not only that he knew he had been in an accident but also that the accident involved an injured person. This was true under a prior version of the offense. See Huffman , 267 S.W.3d at 907-08 (construing *168 earlier version of offense to require proof that the defendant knew that he had been in an accident involving an injured victim). However, Section 550.021 has been amended since Huffman was decided. Unlike the earlier version, the current statute applies to accidents resulting in injury or death and to those reasonably likely to cause injury or death. See TEX. TRANSP. CODE § 550.021(a) ; cf. Huffman , 267 S.W.3d at 907-08 (construing prior version pertaining only to "an accident resulting in injury to or death of a person"). The current statute, which applies to Curry's offense, expressly requires drivers to determine whether a person was involved in any accident. See TEX. TRANSP. CODE § 550.021(a)(3).
Based on the recent revisions to the statute, our sister court has concluded that the State must prove that the defendant knew that he was involved in an accident and failed to stop, investigate, and render any necessary aid. See Mayer v. State , 494 S.W.3d 844, 849-51 (Tex. App.-Houston [14th Dist.] 2016, pet. ref'd). We agree that the revised statute dispenses with the requirement that the State prove that the defendant knew that another person was injured in the accident. A contrary interpretation would render meaningless the current statute's directive that drivers "immediately determine whether a person is involved in the accident."
To the extent that Curry contends that the evidence was legally insufficient to prove beyond a reasonable doubt that he knew he had been in any kind of accident, we disagree. Curry testified that he did not believe he had been in an accident at the time of the underlying events, but he acknowledged that his headlight "suddenly burst," and that he did not know what had happened. Curry testified that he "believed that somebody either threw something, or hit something, or something hit my truck, or that it was just something that had just came up off the road." Curry thus was aware that his truck came into contact with something that he could not identify and did so with enough force to damage the truck. This collision constitutes an "accident" for purposes of Section 550.021. See Steen v. State , 640 S.W.2d 912, 914 (Tex. Crim. App. 1982) ; Sheldon , 100 S.W.3d at 500 ; Rivas , 787 S.W.2d at 115.
Because he was aware that a collision of some kind had occurred, Curry was obliged to stop and determine whether a person was involved. See TEX. TRANSP. CODE § 550.021(a)(3). Curry failed to stop when the collision happened. Although he returned to the scene shortly after the collision to determine what had happened, he once again did not stop and investigate. Under these circumstances, the jury reasonably could have determined that Curry knew he had been in an accident but failed to stop, investigate, and render any necessary aid. Accordingly, we hold that the evidence is legally sufficient to support the verdict.
II. Jury charge
Curry next contends that the trial court erred in refusing to instruct the jury as to his mistake-of-fact defense. He argues that there was conflicting evidence as to whether he knew that he had struck a person, and thus the trial court was required to instruct the jury to acquit if it had a reasonable doubt about whether Curry knew he had done so. See TEX. PENAL CODE § 8.02(a) (mistaken belief about matter of fact provides defense if belief negates culpability required by offense); Goforth v. State , 92 Tex.Crim. 200, 241 S.W. 1027, 1028 (1922) (holding that trial court should have instructed jury to acquit if it had reasonable doubt that defendant knew he struck a person under prior version of failure-to-stop-and-render-aid *169 statute). He further argues that the evidence suggests that he did not know that an accident had occurred.
As we have concluded that the current version of the offense does not require proof that Curry knew that his accident involved a person, his complaint about the trial court's jury instructions is without merit. See Celis v. State , 416 S.W.3d 419, 430-31 (Tex. Crim. App. 2013) (jury instruction on mistake-of-fact defense is required only if the mistake would negate the culpable mental state required by offense). Even if the jury had determined that Curry was simply mistaken in his belief that he had not struck a person, this mistake did not negate his knowledge that he had been in a collision that damaged his truck. That knowledge required him to stop, investigate, determine whether a person was involved, and render aid. See TEX. TRANSP. CODE § 550.021(a) ; Mayer , 494 S.W.3d at 849-51. In his testimony, Curry conceded that he knew that something had collided with his truck and broken his headlight. Thus, the evidence does not raise a fact issue as to whether an accident had occurred at all. See Steen , 640 S.W.2d at 914 ; Sheldon , 100 S.W.3d at 500 ; Rivas , 787 S.W.2d at 115. When the evidence viewed in a light favorable to the defendant does not establish a mistake-of-fact defense, no instruction is required. Granger v. State , 3 S.W.3d 36, 38 (Tex. Crim. App. 1999).
Accordingly, we hold that the trial court did not err in refusing to instruct the jury on Curry's mistake-of-fact defense.
CONCLUSION
We affirm the judgment of the trial court.