**Affirmed and Majority and Concurring Opinions filed September 3, 2020.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-19-00286-CR

**RAMON TORRES, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1541830**

## M A J O R I T Y   O P I N I O N

Appellant Ramon Torres, Jr., appeals his conviction for aggravated sexual assault. In a single issue, he contends that his trial counsel provided ineffective assistance by failing to raise an objection under the Sixth Amendment's Confrontation Clause to the admission of expert testimony and a lab report linking appellant's DNA to the complainant. We reject appellant's issue because he has not shown that his counsel performed deficiently in failing to object. We affirm the trial court's judgment.

## Background

The underlying facts are largely irrelevant to the legal issue presented on appeal, so we do not recount them in detail. A Harris County grand jury indicted appellant of the offense of aggravated sexual assault. Appellant pleaded not guilty, and the case proceeded to a jury trial.

At trial, the evidence showed that the complainant, after being physically and sexually assaulted, went to a hospital, where a forensic examiner took buccal swabs from the complainant's mouth and swabbed beneath the complainant's fingernails for DNA. The Houston Forensic Science Center ("HFSC") tested the DNA extracted from beneath the complainant's fingernails. An HFSC analyst, Jessica Powers, did not perform the testing herself but wrote a report analyzing the resulting data. At trial, Powers explained the DNA testing process used by HFSC and described the procedures to ensure that the testing is performed correctly. She also described chain-of-custody procedures and confirmed that those procedures were followed for the sexual assault kit at issue. Powers testified that appellant could not be excluded as a possible contributor of the DNA extracted from beneath the complainant's fingernails.

During Powers's testimony, the State offered into evidence State's Exhibit 3, the sexual assault kit, and State's Exhibit 4, Powers's report summarizing her findings. Appellant's counsel objected to both exhibits. Regarding Exhibit 4, Powers's report, counsel stated, "Since she did not do the testing, she cannot testify as to what was done or who was involved in it. . . . It's not -- the predicate has not been properly established to introduce this lab report." The trial court overruled the objection and admitted the report into evidence. Appellant raised no other objections during Powers's testimony. Appellant's counsel cross-examined Powers.

The jury found appellant guilty as charged in the indictment and assessed punishment at imprisonment for sixty years.

Appellant timely appealed.

## Analysis

In his sole issue, appellant argues that his trial counsel rendered constitutionally ineffective assistance by failing to preserve a Confrontation Clause objection to Powers's opinions and report.[1]

### A.    Standard of Review

We examine claims of ineffective assistance of counsel under the familiar two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness, based on prevailing professional norms. *Id.* at 688. The prejudice prong requires showing a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Id.* at 688-92.

Our review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable professional assistance. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Donald v. State*, 543 S.W.3d 466, 477 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (op. on reh'g). The Court of Criminal Appeals also has stated that if

---

[1] Appellant contends the objection was solely to "improper predicate," and that counsel failed to invoke the Confrontation Clause. The State does not disagree with appellant's characterization of counsel's objection.

3

counsel has not had an opportunity to explain the challenged actions, we may not find deficient performance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

To argue successfully that trial counsel's failure to object amounted to ineffective assistance, appellant must show, at a minimum, that the trial court would have erred in overruling the particular objection, had it been asserted. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996); *Jagaroo v. State*, 180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("Before this court may conclude counsel was ineffective for failure to make an objection, appellant must show the trial court would have erred in overruling the objection.").

## B.     The Confrontation Clause and Applicable Law

The Confrontation Clause of the Sixth Amendment guarantees an accused the right to confront the witnesses against him. *See* U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The United States Supreme Court has applied this rule to "testimonial" statements and held that such statements are inadmissible at trial unless the witness who made them either takes the stand to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). In *Crawford*, the Supreme Court included in the class of testimonial statements those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52.

Appellant contends that the testing data Powers interpreted in her report is testimonial hearsay. According to appellant, admitting the report without a sponsoring witness who actually performed the testing violates the Confrontation

Clause, and counsel's failure to raise that objection constitutes ineffective assistance. The State responds that the Court of Criminal Appeals has addressed and rejected appellant's contention.

In *Paredes v. State*, the Court of Criminal Appeals answered the following question: "Does the admission of a supervising DNA analyst's opinion regarding a DNA match violate the Confrontation Clause when that opinion is based upon computer-generated data obtained through batch DNA testing?" *Paredes v. State*, 462 S.W.3d 510, 511 (Tex. Crim. App. 2015). To answer this question, the court studied its own precedent, as well as opinions from the United States Supreme Court. *See id.* at 514-17 (discussing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647 (2011); *Williams v. Illinois*, 567 U.S. 50 (2012); and *Burch v. State*, 401 S.W.3d 634 (Tex. Crim. App. 2013)).

The *Paredes* court found *Burch* and *Bullcoming* particularly informative.[2] In *Burch*, the State offered into evidence a lab report certifying that the substance tested was cocaine. *Burch*, 401 S.W.3d at 635. Both the testing analyst and the reviewing analyst signed the lab report, but the State called only the reviewer to testify at trial. *Id.* The reviewing analyst testified that she "basically double-checked everything" that the testing analyst did, but there was no indication that she personally had conducted any tests or observed any tests being performed. *Id.* at 635-36. The *Burch* court held that the state's approach to proving the report violated the Confrontation Clause because the reviewer had no personal knowledge that the tests were done correctly. *Id.* at 637-38.

---

[2] The court noted that the United States Supreme Court's decision in *Williams*, although it addressed similar DNA testing and Confrontation Clause issues, was an "irreconcilably divided opinion" that provided little precedential value. *Paredes*, 462 S.W.3d at 516. Accordingly, the *Paredes* court focused primarily on *Burch* and *Bullcoming*.

In *Bullcoming*, the defendant was charged with driving while intoxicated (DWI), and the prosecutor introduced a lab report certifying that the defendant's blood-alcohol content was above the limit for the New Mexico offense of aggravated DWI. *Bullcoming*, 564 U.S. at 651. The analyst who tested the defendant's blood and signed the report did not testify; instead, the prosecution called a different analyst, one who was familiar with general testing procedures conducted at the lab, but who did not review the testing analyst's work or sign the forensic report. *Id.* at 655. The Supreme Court held that the lab report itself was testimonial and that the "surrogate testimony" given by the non-testing analyst explaining the report violated the Confrontation Clause. *Id.* at 661.

From these cases, the *Paredes* court gleaned several general principles. First, the court said, the admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause. *Paredes*, 462 S.W.3d at 517. Second, testimony from an expert explaining a non-testifying analyst's report does not provide an adequate substitute for cross-examination even if the testifying expert is generally familiar with how the relevant analysis is customarily performed. *Id.* And third, for an expert's testimony based upon forensic analysis performed solely by a non-testifying analyst to be admissible, the testifying expert must present his or her own opinions and conclusions; while the testifying expert can rely upon information from a non-testifying analyst, the testifying expert cannot act as a surrogate to introduce that information. *Id.* at 517-18.

With these principles in mind, the *Paredes* court turned to the facts of that case. The State called an expert to testify about the DNA analyses performed on an item of clothing. The analyst testified about the manner in which the DNA testing was conducted. The analyst did not perform the underlying testing but she

6

supervised the proceedings and analyzed the raw data to reach a final conclusion— i.e., she compared the produced DNA profiles to the evidence and determined a match existed. *Id.* at 512.

Based on those facts, the *Paredes* court considered *Bullcoming* and *Burch* distinguishable. In both of those cases, the prosecution offered a lab report containing testimonial statements through the expert testimony of a person who did not make, and could not verify the authenticity of, the statements. *See Bullcoming*, 564 U.S. at 655; *Burch*, 401 S.W.3d at 634-35. In *Paredes*, on the other hand, the testifying analyst performed "the crucial analysis determining the DNA match and testified to her own conclusions," and therefore the testifying witness was more than a surrogate for a non-testifying analyst's report. *Paredes*, 462 S.W.3d at 518. The *Paredes* court further distinguished *Bullcoming* and *Burch* by pointing out that the testifying expert in *Paredes* "relied upon raw, computer-generated data in reaching her conclusion rather than another laboratory analyst's report." *Id.* The testifying analyst formed her opinion after analyzing DNA profiles, which is raw data generated by a capillary electrophoresis instrument. *Id.* at 519. The raw data, the court said, is not the functional equivalent of live, in-court testimony because it comes from a computer, not from a witness subject to cross-examination. *Id.*

The *Paredes* court therefore concluded that the analyst's testimony did not violate the Confrontation Clause. *Id.* The analyst did not introduce or testify regarding a formal report or assertion from a non-testifying analyst. Instead, she used non-testimonial information—computer-generated DNA data—to form an independent, testimonial opinion, and the defendant was given the opportunity to cross-examine her about her analysis. *Id.*

7

## C. Application

We agree with the State that *Paredes* governs our decision. Here, as in *Paredes*, the testifying analyst (Powers) did not perform the underlying DNA tests herself but rather prepared the final analysis and reached a conclusion by comparing the produced DNA profiles to the evidence and determining a match existed. Powers prepared the report. She based her opinion on raw computer-generated data, not on a testimonial report or assertion from a non-testifying analyst. Although Powers did not describe the testing process in as much detail as did the analyst in *Paredes*, Powers explained the discrete steps of DNA testing her lab performs, including safeguards and control tests, and she referenced "the capillary electrophoresis that generates the data for us to review," which is sufficient to indicate that the data she reviewed was computer-generated. *See id.* at 519 (discussing the raw DNA data generated by a capillary electrophoresis instrument). We conclude, therefore, that the facts in today's case fall within *Paredes*'s purview.

Today's case differs from *Paredes* in one respect, however. Here, the State introduced Powers's written report, not just her opinion testimony. The expert report was not admitted in *Paredes*. *Compare id.* at 513 ("The record is unclear about whether [the testifying analyst] herself created a report based on her opinions, but even if she did, the State did not admit any such report into evidence. The State offered only [the analyst's] opinion testimony."). We consider this difference immaterial to the resolution of appellant's complaint. Powers's report consisted solely of her opinion and did not refer to any underlying testimonial lab report of another. *See, e.g.*, *Garrett v. State*, 518 S.W.3d 546, 554 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (testifying analyst's report admissible because, *inter alia*, it did not indicate that analysts other than testifying analyst were

8

involved in the testing of the evidence). Unlike in the cases appellant cites, Powers's testimony and report do not suggest that Powers was acting merely as a surrogate for someone else who analyzed the data; Powers performed the critical analysis and reached the ultimate conclusion herself. In addition to a summary of Powers's opinion, the report also included a single page of data, which appears, based on the report's notes, to be the computer-generated DNA profiles on which Powers based her opinion. But this raw data is non-testimonial and "stand[s] for nothing on [its] own" without interpretation by an expert. *Paredes*, 462 S.W.3d at 519; *cf. Bullcoming*, 564 U.S. at 660-61 (non-testifying analyst's forensic report on which the testifying analyst relied was sufficient on its own to certify the defendant's blood alcohol content).

The present case is not the first time our court has addressed circumstances similar to those in *Paredes*. In *Whitfield v. State*, the defendant objected at trial to the State's witness who offered her expert opinion regarding the ultimate DNA comparison results, when, according to the defendant, the State instead should have presented all the technicians involved in the DNA testing process. *See Whitfield v. State*, 524 S.W.3d 780, 782 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). The trial court overruled the trial objections, and this court affirmed the rulings, concluding that admission of the expert's testimony did not violate the defendant's rights under the Confrontation Clause. *Id.* at 783, 788. Relying on *Paredes*, we reasoned that the expert performed the crucial analysis to determine the DNA match and testified to her own conclusions, and that the defendant had the opportunity to cross-examine the expert about her conclusions linking the defendant to the crime based on the defendant's DNA and about how the expert arrived at those conclusions. *Id.* at 786-88 (citing *Paredes*, 462 S.W.3d at 514, 519); *see also Mayer v. State*, 494 S.W.3d 844, 851-52 (Tex. App.—Houston [14th

Dist.] 2016, pet. ref'd) (rejecting appellant's argument that she should be afforded under the Confrontation Clause an opportunity to confront all the technicians who had any access to the DNA samples at issue).

Powers used non-testimonial information—computer-generated DNA data—to form an independent, testimonial opinion memorialized in the report admitted at trial and about which she testified live at trial. Appellant was given the opportunity to cross-examine her about her analysis and her report. There is no Confrontation Clause violation on these facts. *See Paredes*, 462 S.W.3d at 519; *Whitfield*, 524 S.W.3d at 786-88; *Mayer*, 494 S.W.3d at 851-52; *see also Garrett*, 518 S.W.3d at 555 ("We therefore agree with the State that because Davis independently analyzed the raw DNA data and offered his own opinion concerning the comparison of the DNA profiles, and he testified and was subject to cross-examination, the admission of his testimony and his lab report, even in the absence of testimony from [testing analysts], does not violate the Confrontation Clause.").

Appellant cannot demonstrate that his trial counsel provided ineffective assistance in failing to raise a Confrontation-Clause objection without showing that the trial court would have erred in overruling the objection, had it been asserted. *See Vaughn*, 931 S.W.2d at 566; *Jagaroo*, 180 S.W.3d at 797. Appellant has not made the required showing because no Confrontation-Clause violation has occurred here. Had trial counsel timely raised the objection, the trial court would not have erred in overruling it. Appellant's counsel's performance was not deficient in the manner appellant asserts, and thus appellant's ineffective-assistance complaint fails on the first *Strickland* prong.

## Conclusion

Appellant has not shown that the trial court would have erred in overruling an objection to the testifying expert's report based on the Confrontation Clause.

Accordingly, appellant has not demonstrated that his counsel's performance was deficient. We need not address whether counsel's performance caused prejudice under *Strickland*. We overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice


Panel consists of Chief Justice Frost and Justices Jewell and Spain (Spain, J., concurring).

Publish — Tex. R. App. P. 47.2(b).