

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00043-CR

LEWIS CORNELIUS TUCKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 29885

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Lamar County jury convicted Lewis Cornelius Tucker of leaving the scene of an accident involving injury, an offense under Section 550.021 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 550.021. Tucker pled "true" to the State's habitual-offender allegations, and after a punishment trial, the jury sentenced him to twenty-five years' imprisonment.

On appeal, Tucker argues that he was egregiously harmed by jury-charge error. He also argues that the judgment must be modified. Because we find no egregious harm from the alleged jury-charge error, we overrule Tucker's first point of error. Even so, we sustain Tucker's remaining points of error and modify the trial court's judgment to reflect the proper degree and statute of offense. As modified, we affirm the trial court's judgment.

## I. Factual Background

During opening statement, the State argued that Tucker did not stop his car after hitting Alexis Doss, who was thirty-three weeks pregnant, as she was crossing an intersection on her bicycle. Tucker's defense to the State's allegation was that Doss "ran into [Tucker's] vehicle" and that Tucker "did stop at the scene, Tucker made sure the person was okay, and he proceeded on to his home."

At trial, Doss testified that she and her boyfriend, Wilder Keen, were riding their bicycles around 6:00 or 7:00 p.m., while it was still daylight. Doss was "[s]even to eight" months pregnant when she was hit by a silver Cadillac at a four-way intersection. She explained that Keen had crossed the intersection ahead of her and that Tucker's "car rolled up and stopped at

2

the stop sign while [she] was . . . halfway in the road."[1]   Keen also testified that Tucker had stopped at the stop sign.  Keen testified that Tucker "sped up and . . . came in contract with" Doss and her bicycle and drug them against the street.  According to Doss, Tucker's car "hit [her] and drug [her] and [her] bike under [the car]" for approximately ten feet before she was able to "jump[] up."  She clarified that Tucker "was just going straight [through the intersection], then he turned right after he hit [her]."  Doss and Keen both testified that Tucker did not stop to check on Doss and drove off instead.  After Keen "threw his bike down" and called 9-1-1, Doss was transported by ambulance to the hospital.

Doss testified that "the skin was gone on [her] knee," her right ankle was sprained, her "elbow was scraped pretty bad," and she had "road rash that was on [her] stomach."  Doss testified that she also "went into preterm labor" and was held in the hospital overnight to prevent a premature birth.   Photographs of her injuries were shown to the jury.

Officer Jonathan Huff, who responded to the scene of the accident, found "the plastic inside of a fender well sitting in the middle of the street."  The fender well belonged to the car that hit Doss.  Huff testified that he followed witness leads to Tucker's house, saw Tucker sitting in the front yard, and asked him if he had seen a silver Cadillac.  Huff's body-camera footage showed his interaction with Tucker and was played for the jury.  Tucker deflected blame by saying that he saw a silver car drive off.  When Huff asked Tucker how many vehicles he had, Tucker said he only had a white Jeep and a blue Toyota, but Huff found a silver Cadillac on the property after getting Tucker's permission to search it.  When Tucker claimed he had not driven

---

[1]Doss said, "I stopped at the road and I looked both ways and went and when I was halfway through the road that's when it happened."

3

the Cadillac for two years, Huff retrieved the piece of the fender well found at the scene and, in front of Tucker, matched it to the missing part of a fender well on Tucker's Cadillac. He then told Tucker to "come forward with the information of being involved." While being recorded, Tucker admitted to Huff that he was driving the car that hit Doss, saw Doss get up after being hit, but did not stop because he did not have a valid driver's license or insurance.

In his defense, Tucker, who was seventy-five years old, testified that he stopped at the stop sign "[a]nd then . . . when [he] went across [the intersection] all at once a bicycle c[a]me out in front of [him]." Tucker said he hit the bicycle and saw Doss "getting up off her knee and stumbling on the sidewalk." Tucker claimed that he "stopped and looked and . . . opened [his] door" to find the bicycle behind the front wheel of his car. Tucker also said that Doss did not act as if she was injured. He claimed, "I looked over at her to see was she alright and she was already up. . . . Then I left." Tucker said he drove straight to his house and was untruthful with the police because he "was on parole at the time and . . . was paranoid." During cross-examination, the State established that Tucker was on parole following a conviction of conspiracy to commit capital murder and had prior convictions for burglary of a habitation and failure to stop and render aid after collision.

After hearing the evidence, the State convicted Tucker of leaving the scene of an accident involving injury.

4

## II.     We Find No Egregious Harm from Any Alleged Jury-Charge Error

In his first point of error, Tucker contends that "[t]he application portion of [the] guilt-innocence charge included two methods to commit accident involving injury, rather than the one method alleged in the indictment." Even assuming error, we find no egregious harm.

### A.     Standard of Review

"'[T]he jury is the exclusive judge of the facts,' but the trial court submits a charge to the jury 'distinctly setting forth the law applicable to the case.'" *Alcoser v. State*, 663 S.W.3d 160, 164 (Tex. Crim. App. 2022) (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. arts. 36.13, 36.14). "The charge is meant to inform the jury of the applicable law and how to apply it to the facts of the case." *Id.* at 164–65 (citing *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

"A jury-charge-claim analysis involves two steps: First, we determine whether the charge is erroneous." *Id.* at 165. "If it is, then we must decide whether the appellant was harmed by the erroneous charge." *Id.* (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005)). "There are two standards of review for jury-charge-error claims." *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). As in this case, "[i]f there was not a timely objection, the record must show 'egregious harm.'" *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

"Harm is assessed 'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Id.* (alteration in

original) (quoting *Almanza*, 686 S.W.2d at 171).  "An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory."  *Id.* (citing *Almanza*, 686 S.W.2d at 171).  "A finding of egregious harm must be based on 'actual harm rather than theoretical harm.'"  *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).  "Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one."  *Id.* (citing *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015)).  "Neither party bears the burden to show harm."  *Id.* (citing *Marshall v. State*, 479 S.W.3d 840, 842–43 (Tex. Crim. App. 2016)).

**B.      We Assume Charge Error**

The indictment against Tucker alleged that he committed accident involving injury in the following manner:

> [Tucker,] while operating a vehicle, and after having been involved in an accident that the defendant knew was reasonably likely to result in injury to or death of a person, and while knowing that an accident had occurred, intentionally and knowingly fail[ed] to immediately stop the defendant's vehicle at the scene of the accident or as close to the scene of the accident as possible, and the accident resulted in bodily injury to Alexis Doss.

In relevant part, Section 550.021 states,

> (a)      The operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:
>
> > (1)      immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
> >
> > (2)      immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;

6

        (3)    immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and

        (4)    remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

    . . . .

        (c)    A person commits an offense if the person does not stop or does not comply with the requirements of this section.

TEX. TRANSP. CODE ANN. § 550.021(a), (c). Tucker's indictment showed that it raised an allegation under Section 550.021(a)(1). Even so, the application portion of the charge stated,

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that . . . the Defendant, Lewis Tucker, did then and there, while operating a vehicle, and after having been involved in an accident that the defendant knew was reasonably likely to result in injury to or death of a person, and while knowing that an accident had occurred, intentionally and knowingly fail to immediately stop the defendant's vehicle at the scene of the accident or as close to the scene of the accident as possible, or immediately return to the scene of the accident and the accident resulted in bodily injury to Alexis Doss, then you will find the Defendant *Guilty* of the offense of Accident Involving Injury as charged in the Indictment.

Accordingly, Tucker argues that the application paragraph "included a second potential way to violate the code provision: failing to return to the scene," which was not alleged in the indictment. For purposes of our analysis, we will assume error.

## C. We Find No Egregious Harm

In determining whether Tucker suffered egregious harm resulting from charge error, we have considered the entire jury charge, state of the evidence, argument of counsel, and Tucker's defensive theory.

7

Tucker argues that the jury charge was erroneous, not only because the application paragraph included a method of committing the offense omitted by the State's indictment, but also because the abstract portion of the charge listed all "four possible ways that the offense could be committed." Even assuming the jury charge weighs in favor of finding egregious harm, we conclude that the evidence, argument of counsel, and Tucker's defensive theory weigh against such a finding.

The evidence showing Tucker's guilt was strong. Doss and Keen both testified that Tucker did not stop after hitting Doss. Although Tucker claimed he did stop and only left the scene after seeing that Doss was up and about, the jury likely lent little credibility to Tucker's statements after viewing Huff's body-camera footage and Tucker's prior conviction for failing to stop and render aid. Instead, it likely believed Doss and Keen's version after hearing Tucker admit on the recording that he failed to stop at the scene because he was on parole and had no valid driver's license or insurance.

During closing arguments, neither the State nor Tucker mentioned returning to the scene of an accident for any purpose. After the State reiterated the evidence demonstrating that Tucker failed to stop, Tucker argued that he did not run into Doss, but that Doss "pushed the bike into his path." Tucker argued that he only left the scene after he stopped, opened his door, and determined that Doss was not injured by his vehicle. Those closing arguments established that the focus of the case was on whether Tucker stopped at the scene, not whether he returned to the scene after fleeing. As a result, Tucker admits that "the arguments of the parties . . . weigh against finding that the charge error was egregious."

8

Next, Tucker's "defense did not depend on some *distinction* between stopping, returning, or remaining at the scene." *Huffman v. State*, 234 S.W.3d 185, 194 (Tex. App.—San Antonio 2007), *aff'd on other grounds*, 267 S.W.3d 902 (Tex. Crim. App. 2008) (emphasis added) (finding no egregious harm stemming from a jury charge that submitted multiple manner and means under Section 550.021 to the jury). Instead, his defense was based on whether he immediately stopped at the scene at all. By its conviction, the jury rejected Tucker's version of events in favor of Doss and Keen's version.

The State argued that Tucker cannot show actual, as opposed to theoretical, harm, and we agree. After reviewing the entire record, we find that the jury charge did not affect the basis of Tucker's case, deprive him of any valuable right, or vitally affect his defensive theory. As a result, we find no egregious harm.

### III. We Must Modify the Trial Court's Judgment

Tucker's second and third points of error urge us to modify the trial court's judgment. We sustain these points.

Tucker was indicted under Section 550.021 of the Texas Transportation Code. As indicted, Tucker's offense was punishable by "imprisonment in the Texas Department of Criminal Justice for not more than five years or confinement in the county jail for not more than one year," "a fine not to exceed $5,000," or "both the fine and the imprisonment or confinement." TEX. TRANSP. CODE ANN. § 550.021(c)(2)(A)–(C). The trial court's judgment listed the degree of offense as "FELONY UNASSIGNED." In his second point of error, Tucker

9

argues that the judgment should be modified to reflect that he was convicted of a third-degree felony. The State concedes the issue.[2]

We sustain Tucker's second point of error. Section 12.41 of the Texas Penal Code states that "any conviction not obtained from a prosecution under this code shall be classified as" a "'felony of the third degree' if imprisonment in the Texas Department of Criminal Justice or another penitentiary is affixed to the offense as a possible punishment." TEX. PENAL CODE ANN. § 12.41. Because Tucker's conviction was obtained from a prosecution under the Texas Transportation Code and the possible punishment for Section 550.021(c)(2) includes imprisonment as a possible punishment, Tucker's conviction was a third-degree offense. *See Childress v. State*, 784 S.W.2d 361, 365–66 (Tex. Crim. App. 1990). As a result, we modify the trial court's judgment to reflect the proper degree of offense.

In his third point of error, Tucker argues that the trial court's judgment mistakenly stated that the statute of offense was Section 550.021(c)(2) of the Texas Penal Code, rather than the Texas Transportation Code. The State also concedes this issue. We sustain Tucker's third point of error and modify the judgment to reflect the proper statute of offense.

---

[2]The State suggests that we modify the judgment to read "third degree felony, enhanced." Because only Tucker's punishment was enhanced, and not the degree of his offense, we decline the State's suggestion. We further note that the portion of the judgment showing Tucker's pleas of "true" to the State's enhancement allegations, and the jury's finding of "true" to both allegations, already shows that Tucker received an enhanced punishment.

## IV.    Conclusion

We modify the trial court's judgment to reflect that Tucker was convicted of a third-degree-felony offense and that his statute of offense was Section 550.021(c)(2) of the Texas Transportation Code.  As modified, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    July 27, 2023
Date Decided:    August 16, 2023

Do Not Publish